VROBERT MANN, CSB 48293
DONALD W. COOK, CSB 116666
ATTORNEYS AT LAW
3435 Wilshire Blvd., Suite 2900
Los Angeles, CA 90010
(213) 252-9444; (213) 252-0091 facsimile
manncook@earthlink.net

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN GANT, REGINALD LENARD SMITH, JOSE ALEXANDER VENTURA, individually and as class representatives<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, ETC., ET AL.,<br><br>Defendants. | Case No. CV08-5756 GAF (PJWx)<br><br>**PLAINTIFFS' OPPOSITION TO LOS ANGELES CITY DEFENDANTS MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date: 10/5/09<br>Time: 9:30 a.m.<br>Ctrm: 740 (Roybal) |

## I. PLAINTIFFS' *MONELL* ALLEGATIONS ARE SUFFICIENT.

### A. Plaintiffs' Allegations Satisfy *Karim-Panahi* and *Leatherman.*

In relevant parts, the Third Amended Complaint ("TAC") alleges that the LA City and LAPD defendants have actual knowledge of how warrants are issued and accessed, including knowledge of unique, fingerprint-matched identifiers, the need to record and use such information when determining if an arrestee is a warrant's subject, yet the LA City and LAPD defendants, as a matter of course and practice, refuse to identify warrants' subjects with the requisite particularity; refuse to update warrant database systems to prevent future wrongful arrests reasonably certain to occur; and refuse to train their personnel on the use of the fingerprint-matched identifiers. TAC ¶¶18-24, ¶38, ¶51, ¶54. The TAC also alleges that the wrongful arrests and imprisonments of Plaintiffs Kelvin Gant and Jose Alexander Ventura were pursuant "the policies, practices and customs of . . . LA City . . . and LAPD." TAC ¶60.[1]

These allegations are sufficient. In *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621 (9th Cir. 1988), the Ninth Circuit held:

> [A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice."

839 F.2d at 624.

In *Leatherman v. Tarrant County*, 507 U.S. 163, 165-66 (1993), the Supreme Court upheld *Karim* as correctly stating the pleading standard for *Monell* liability, stating:

"[T]he Federal Rules of Civil Procedure do not require a claimant to set out

---

[1] The allegations in ¶60 are also incorporated into the second cause of action seeking damages under 42 U.S.C. § 1983. See TAC ¶62.

> in detail the facts upon which he bases his claims. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

507 U.S. at 168 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002), wherein the Ninth Circuit held it error to require a heightened pleading standard in § 1983 cases.

**B. *Twombly* & *Iqbal* Did Not Overrule *Leatherman.***

Despite the foregoing decisions, the LA City defendants argue that the TAC does not meet the pleading requirement of Fed.R.Civ.Proc. 8 as interpreted in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). (LA City Motion, pp. 13-16.)

Defendants are wrong.

First, one would think that if the Supreme Court, in either *Twombly* or *Iqbal*, had meant to overrule *Leatherman* the Court would have said so. Instead, *Iqbal* does not even mention *Leatherman* whereas *Twombly* went out of its way to state it was *not* disturbing the result or analysis in *Leatherman*. In *Twombly*, after stating that the complaint "fails to state a claim," the Court quickly noted that its conclusion was based on well-settled pleading standards, including those stated in *Leatherman*:

> In reaching this conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished " 'by the process of amending the Federal Rules, and not by judicial interpretation.' " *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*quoting Leatherman v. Tarrant County Narcotics*

> *Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires. Fed. Rules Civ. Proc. 9(b)-(c). Here, our concern is not that the allegations in the complaint were insufficiently "particular(ized)", *ibid.*; rather, the complaint warranted dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible.

550 U.S. at 569 n.14.

Second, *Iqbal* concerned the need for factual allegations implicating, as personally responsible for constitutional violations, high ranking policy makers in the formulation and enforcement of policy. The *Iqbal* plaintiff alleged that John Ashcroft and Robert Mueller, while United States Attorney General (Ashcroft) and FBI Director (Mueller), had personally approved of governmental policies that unconstitutionally discriminated against plaintiff. So the issue was whether plaintiff had adequately "state[d] a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity." 129 S.Ct. at 1947. The Court then found that the allegations stated only legal conclusions devoid of any factual allegations that the defendants had personally participated in imposing upon plaintiff and others likewise situated " 'restrictive conditions of confinement' " "due to their race, religion, or national origin." 129 S.Ct. at 1952. Rather, plaintiff had only "plausibly suggest[ed] that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." *Id.*

Plaintiffs herein have not sued policy makers so there is no need for them to allege facts overcoming a claim of qualified immunity or showing personal involvement in a

policy that cause constitutional violations, the hurdle the *Iqbal* plaintiff faced. Moreover, the TAC specifically alleges that the various entity defendants fail and refuse to train their personnel to utilize the warrant information systems (CWS and WPS), along with law enforcement-created fingerprint-matched identifiers, to (a) prevent wrongful incarcerations on warrants meant for others, and (b) prevent the *re-arrests* of persons already cleared as being *not* the subject of outstanding warrants. Consequently, plaintiffs (and others) are arrested on warrants meant for others, re-arrested on warrants for which they have been cleared, while facing the prospects of future wrongful arrests. TAC ¶¶18-24, ¶38, ¶51, ¶54. These allegations are thus plausible even if *Iqbal* applies.

## II. PLAINTIFF KELVIN GANT HAS STANDING TO SEEK INJUNCTIVE RELIEF.

In arguing that Plaintiff Kelvin Gant lacks standing to seek injunctive relief, The LA City defendants rely on the docket in *People v. Kevin Gant*, No. A953793. LA City Motion, pp. 5-6. This is the same docket the LA County defendants relied on in its motion to dismiss filed 2/20/09. See LA County's "Request for Judicial Notice" etc., filed 2/20/09 (document 26), Exhibit 4 thereto (pp. 8-10) (docket in A953793). Relying on this docket the Court, in its July 22, 2009 ruling, stated:

> Moreover, it appears that the warrant on which Gant erroneously was arrested remains in force. The state-court docket [in case no. A953793] indicates that the warrant merely was "recalled," not quashed, and that the warrant was recalled at least three separate times before Gant's April 29, 2008 arrest. (See County's Req. Jud. Not. ¶4, Ex. 4 at 9-10.) This might explain why the Superior Court deemed it necessary to issue Gant a judicial clearance. (Id. at 10.) Further, it would have made little sense for the state court to quash the warrant, given that the true subject of the warrant

> apparently has not yet been arrested.
>
> For these reasons, the Court concludes that Gant has standing to proceed with his § 1983 equitable relief claim.

7/22/09 Order 11:16-25.

LA City defendants do not even acknowledge this Court's earlier analysis and conclusion based on this same piece of evidence, let alone explain why the Court was mistaken in its 7/22/09 order. As the Court has already found, nothing in the docket prevents the warrant from re-issuing. Tellingly, the superior court believes Kelvin Gant faces a credible threat of re-arrest – that court issued a judicial clearance, an unnecessary act if, as LA City defendants contend, there is no "credible threat of future injury based on this bench warrant." LA City Motion 5:23-24.

Furthermore, while the TAC alleges specifically only the warrant issued in A953793, the TAC states there are numerous other Los Angeles superior court filings against non-party Kevin Gant. TAC ¶36 ("Non-party Kevin is a criminal defendant in a number of pending criminal cases in Superior Court.") A search of the Superior Court on-line index of criminal filings using the search criteria of "Kevin Gant" and the date of birth, reveals five criminal filings: M01184 (misdemeanor, driving with suspended license [Veh. Code § 14601(a)]); A650692 (felony, burglary [Penal Code § 459]); A773259 (felony, possession of controlled substance for sale [Health & Safety Code § 11351]); no. A953793 (felony, possession of controlled substance and for sale [Health & Safety Code §§ 11351, 11377(a)]); no. A026240 (felony, possession of controlled substance [Health & Safety Code § 11350(a)]).

Therefore, it is not speculation that Mr. Gant faces a real risk that he will again be arrested on a warrant meant for his brother because LA City defendants refuse to (a) adequately describe Kelvin Gant to the exclusion of Kevin Gant, and (b) update CWS to

indicate that Plaintiff Kelvin Gant is *not* his brother Kevin Gant. TAC ¶¶37-40.

## III. PLAINTIFFS MR. GANT AND MR. VENTURA ALLEGE FOURTH AMENDMENT VIOLATIONS.

In its 7/22/09 Order, the Court held that the warrants satisfied the Fourth Amendment's particularity requirement because the warrants included the intended subjects' names. In addition, the rule from *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) – " '(G)eneric classifications in a warrant are acceptable only when a more precise description is not possible' " – was inapplicable according to the Court since *Cardwell* was a search warrant case whereas this case involves arrest warrants. 7/22/09 Order, pp. 16-17.

Plaintiff respectfully disagrees with the Court's analysis on this point.

*Cardwell* applies as much to arrest warrants because Fourth Amendment particularity does not distinguish between arrest and search warrants. First, there is the plain wording of the Fourth Amendment's particularity requirement: warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. Or as Justice Scalia put it in a unanimous decision by the Supreme Court: the Fourth Amendment "specifies . . . two matters that must be 'particularly describ(ed)' in the warrant: 'the place to be searched' and 'the ***persons*** or things to be seized.' " *United States v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494, 1500 (2006) (emphasis added). Justice Scalia's observation echoed long established Supreme Court precedent. *E.g.*, *Beck v. Ohio*, 379 U.S. 89, 96 fn. 6 (1964) ("The *Aguilar* [*v. Texas*, 378 U.S. 108 (1964)] and *Nathanson* [*v. United States*, 290 U.S. 41 (1933)] cases involved search warrant rather than arrest warrants, but as the Court has said, 'The Language of the Fourth Amendment . . . of course applies to arrest as well as search warrants. *Giordenello v. United States*, 357 U.S. 480, 485-86 (1958).''). *See also Powe v. City of*

*Chicago*, 664 F.2d 639, 648 n.11 (7th Cir. 1981) (citing with approval cases applying particularity to search warrants in determining if arrest warrant sufficiently described its intended subject).

Second, the cases the Court relied on do not contradict Plaintiff's proposition, *i.e.*, defendants should identify warrants' subjects by their fingerprint-matched identifiers when such information is actually known *and* imposes no appreciable costs in doing so. *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981), a nearly 30 year old decision not involving dispositive bio-metric identifiers, merely stated the general rule that a warrant that correctly names its subject ***"generally"*** satisfies Fourth Amendment particularity. However, that rule is not absolute as *Powe* recognized. *Powe* reversed the trial court because the name defendants put on the arrest warrant, in the facts of that particular case, did not adequately describe the intended subject and thus created too great a risk of seizing the wrong person. 664 F.2d at 646-48 & n.11.

The other case cited by the Court, *Gero v. Henault*, 740 F.2d 78 (1st Cir. 1984) (7/22/09 Order p. 16), involved no facts similar to those here. The *Gero* warrant named its subject by his name and his alias, with no indication that a more particularized description was available. Here, by contrast, in causing issuance of the Gant and Ventura warrants, the LAPD could have easily identified ***at no additional cost or burden*** the warrants' intended subjects in terms unique to them. Stated another way, where the police incur no effort in identifying a warrant's subject by his bio-metric identifiers like CII numbers, it is unreasonable not to. In a state with a population approaching 40 million, allowing the police to blithely disregard evidence fingerprint-matched identifiers like CII numbers is irrational. After all, law enforcement has made tremendous strides in developing identification systems that overcome the problem of aliases, similar names, identity theft, and the like, by using the one universally acknowledged and widely

available unique, not-subject-to-alteration, biometric characteristic – fingerprints. See, for instance, UNITED STATES DEPARTMENT OF JUSTICE, SURVEY OF STATE CRIMINAL HISTORY INFORMATION SYSTEMS (2001) (available at http://www.ojp.usdoj.gov/bjs/pub/pdf/sschis01.pdf).

There are yet additional reasons why the Gant and Ventura warrants failed the particularity requirement. Regarding Mr. Gant, the LA City defendants had actual knowledge that he had been wrongly arrested on his brother's warrant some *six* times. TAC ¶37. The LAPD was also "the investigating agency for purposes of the warrants' inputting into CWS and WPS," TAC ¶36, thus making the LAPD the police agency responsible for updating CWS and WPS with the information that would exclude Mr. Gant as the warrants' subject. TAC ¶¶20, 23. Despite that knowledge and responsibility (per its role as the "investigating agency") the LAPD refused to update CWS and WPS with the necessary information. TAC ¶¶38-40.

Turning to the Ventura warrant, it stated its subject's name as only "Jose Ventura." See LA County Request for Judicial Notice filed 8/27/09 (document 72), Ex. 4 (page 12). Yet the intended subject's real name was "Jose Ventura Gonzalez Perez." TAC ¶50. The failure of the warrant to name its subject by his full name makes the warrant invalid under *Powe v. Chicago*. In *Powe*, the Seventh Circuit held the warrant invalid since it failed to name its subject by all of his known names. 664 F.2d at 647-48. A similar result was reached in *Rogan v. City of Los Angeles*, 668 F. Supp. 1384, 1393-94 (C.D. Cal. 1987) (Judge Kelleher criticizes law enforcement agencies' refusal to use the warrant database's capability to more precisely describe the intended subject by subject's full name and aliases, thus making arrest warrant unlawful.). The LA City defendants are also responsible for the failure to describe the Ventura warrant subject with the requisite particularity since the LAPD was the "investigating agency." That is, it was the duty of

the LAPD to input *and* update the CWS warrant entry. TAC ¶50 ("Defendant LAPD was the investigating agency for purposes of the [Ventura] warrant's inputting into CWS and WPS."); TAC ¶23 (only investigating agency can create and update CWS warrant record); TAC ¶20 (duties and responsibilities of the investigating agency).

## IV. THE COURT HAS ALREADY DETERMINED THAT PLAINTIFFS MR. GANT AND MR. VENTURA ALLEGE FOURTEENTH AMENDMENT VIOLATIONS.

LA City defendants argue Plaintiffs Gant and Ventura do not and cannot allege Fourteenth Amendment violations. LA City Motion, pp. 8-13. Missing entirely from defendants' motion is any mention of this Court's 7/22/09 Order wherein the Court found that Plaintiffs had adequately alleged, against the LA City defendants, Fourteenth Amendment violations. 7/22/09 Order, 19:1-3 ("Court concludes that Gant and Ventura have set forth sufficient facts to establish that the Los Angeles Defendants violated the Fourteenth Amendment due process clause.").

As to the Fourteenth Amendment claim, the allegations have not changed. Therefore, the Court's earlier ruling disposes of what amounts to a motion for reconsideration not labeled as such.

## V. THE COMPLAINT ADEQUATELY ALLEGES THAT PLAINTIFFS MR. GANT AND MR. SMITH HAVE TAXPAYER STANDING.

The 7/22/09 Order granted Plaintiffs Mr. Gant and Mr. Smith leave to amend their injunctive relief claim based on taxpayer standing. 7/22/09 Order 28:1-4. The TAC cures the defects the Court found by alleging:

> 90. . . . As of this date, these Plaintiffs are residents of the City of Los Angeles and County of Los Angeles. These Plaintiff have paid taxes, and continue to pay taxes to the City of Los Angeles and County of Los Angeles.

These Plaintiffs are informed and believe and bases thereon alleges that defendants LA County, LASD, LA City and LAPD have used and continue to use funds collected from taxpayers like Plaintiffs, to maintain the policies and practices described above by which persons are wrongly held on warrants meant for others. Funds expended include funds spent housing persons in custody on warrants meant for others.

(Per paragraph 93, the Second Amended Complaint alleged only that "Plaintiffs Kelvin Gant and Reginald Lenard Smith are County and City taxpayers, within the meaning of Cal. Civ. Proc. Code § 526a.")

Clearly, these allegations allege the specificity the Court required in its order. Plaintiffs now allege the "direct pocketbook injuries," both past and present, by their payment of taxes directly to the City of Los Angeles (and County of Los Angeles). Plaintiffs further allege expenditure of funds to house as prisoners persons arrested on warrants meant for others. The allegations are sufficient. *Citizens for Uniform Laws v. County of Contra Costa*, 233 Cal. App. 3d 1468, 1472-73 (1991); *Santa Barbara County Coalition Against Auto. Subsidies v. Santa Barbara County Ass'n of Governments*, 167 Cal. App. 4th 1229, 1236 (2008).

**VI. CONCLUSION.**

For the foregoing reasons, the LA City defendants' motion should be denied.

DATED: September 21, 2009

**ROBERT MANN**
**DONALD W. COOK**
Attorneys for Plaintiff

By ______________________
Donald W. Cook