UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 05 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KELVIN GANT, an individual; et al., | No. 12-56080 |
| Plaintiffs - Appellants, | D.C. No. 2:08-cv-05756-GAF-PJW |
| v. | U.S. District Court for Central California, Los Angeles |
| COUNTY OF LOS ANGELES; et al., | **MANDATE** |
| Defendants - Appellees. | |



RECEIVED
CLERK, U.S. DISTRICT COURT

2/5/15

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MAT _____ DEPUTY

The judgment of this Court, entered November 24, 2014, takes effect this

date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Rebecca Lopez
Deputy Clerk



FILED

**NOT FOR PUBLICATION**

NOV 24 2014

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KELVIN GANT, an individual; et al., | No. 12-56080 |
| Plaintiffs - Appellants, | D.C. No. 2:08-cv-05756-GAF-PJW |
| v. | |
| COUNTY OF LOS ANGELES; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued April 9, 2014
Submitted May 19, 2014
Pasadena, California

Before: THOMAS, M. SMITH, and CHRISTEN, Circuit Judges.

This is a case of mistaken identity arising from the separate arrests and

detentions of three men—Kelvin Gant, Reginald Lenard Smith, and Jose

Alexander Ventura—based on warrants intended for other people. Appellants filed

over twenty federal and state law claims alleging that various defendants issued

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

flawed warrants, improperly arrested them, or improperly detained them. The district court ruled against all of the appellants' claims at issue on appeal either on motions to dismiss, through judgment on the pleadings, or on summary judgment. We have jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).

---

[1]    In an opinion filed concurrently with this memorandum disposition, we address Gant's Fourth and Fourteenth Amendment claims against the L.A. City and L.A. County defendants filed under 42 U.S.C. § 1983, Ventura's Fourth and Fourteenth Amendment § 1983 claims against the L.A. City, L.A. County, San Bernardino, and Chino defendants, and Ventura's Bane Act claim against the Chino defendants.

Because the parties are familiar with the facts of the case, we will not recount them here.

2

Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed de novo. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation marks and citation omitted).

A district court's decision to grant summary judgment is reviewed de novo. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). On review, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

1.     Kelvin Gant

Kelvin Gant argues that the L.A. County defendants used "the coercive power of law enforcement to intentionally seize and hold" him in violation of California's Bane Act (Cal. Civ. Code § 52.1). The district court concluded that Gant's complaint did not allege any act that might qualify as "threats, intimidation, or coercion" under the Act and dismissed the claim on this basis. The record indicates that Gant was only briefly in the L.A. County defendants' custody, and

3

only for the purpose of appearing in court.  Gant argues his detention, by itself, was a coercive act.  But the California Court of Appeal recently held that "where coercion is inherent in the constitutional violation alleged, i.e., an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met.  The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself."  *Shoyoye v. Cnty. of Los Angeles*, 137 Cal. Rptr. 3d 839, 849 (Cal. Ct. App. 2012).  Gant did not allege any independent coercive acts by the L.A. County defendants.  We therefore affirm the district court's order dismissing this claim.

The L.A. County defendants briefly detained Gant post-arrest, and Gant argues they knew or should have known he was falsely imprisoned because his fingerprints did not match those of the warrant's subject.  The district court concluded that Gant's false imprisonment claim was barred by California Civil Code § 43.55, which states in pertinent part: "[t]here shall be no liability on the part of, and no cause of action shall arise against, any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant."  Section 43.55 pertains to arresting officers, not jail personnel, but *Lopez v. City of Oxnard* rejected a similar false

4

arrest claim against jail personnel.  254 Cal. Rptr. 556, 560 (Cal. Ct. App. 1989)

("Jail personnel may not be similarly situated to police officers on the street, but

they, too, are entitled to rely on process and orders apparently valid on their

face."); *see also Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 393 (9th Cir. 2014)

(confirming that jail personnel are not liable when they rely upon a warrant that is

valid upon its face).  Since the warrant at issue in Gant's arrest appeared to be valid

on its face, and because Gant does not argue that he showed his judicial clearance

form to the L.A. County defendants or otherwise complained to them that they

were detaining the wrong person, we affirm the district court's order dismissing

Gant's false arrest claim.

2.      Reginald Lenard Smith

Smith argues that the L.A. County defendants violated the Fourth

Amendment's particularity requirement by not including the warrant subject's

known biometric identifiers or full name on the warrant.  We assume Smith refers

to the warrant abstract, not the warrant issued by a court.  Smith's claim

challenging the particularity of the warrant is foreclosed by *Rivera*, which

concluded that the warrant at issue there "satisfied the particularity requirement

because it contained both the subject's name and a detailed physical description,"

even though it did not include a Criminal Investigation and Identification number.

5

*Id*. at 388.  The warrant at issue in Smith's arrest satisfied that standard.  We affirm the district court's order dismissing Smith's Fourteenth Amendment claim against the L.A. County defendants.

Smith might also appeal the dismissal of his claim that the L.A. County defendants over-detained him in violation of his Fourteenth Amendment due process liberty interest.[2]  Assuming that this claim is raised on appeal, we affirm the district court's order dismissing it.  The district court concluded the L.A. County defendants had lawful authority to detain Smith from August 15, 2007 to August 22, 2007 based on a misdemeanor warrant actually meant for him, and from August 22, 2007 until he was released on August 28, 2007 based on a valid court order.  The latter was in place while it was determined that Smith was not the subject of a felony sexual battery warrant that appeared in the computerized database.  *Rivera* held that "[i]f a suspect is held according to court order, county officials are not required to investigate whether that court order is proper."  745 F.3d at 392.  Because Smith was detained pursuant to a court order, his jailers are not liable for detaining him for the period from August 22 to August 28.

---

[2]     Plaintiffs' opening brief only summarizes this claim in its discussion of the district court's rulings.  It does not include this claim in its discussion of the Fourteenth Amendment, and plaintiffs' reply brief mentions Smith only in the Fourth Amendment context.

The district court dismissed Smith's Bane Act and state law false imprisonment claims against the L.A. County defendants after concluding that Smith failed to exhaust his administrative remedies. Smith does not address exhaustion on appeal. Under the California Tort Claims Act, a plaintiff may not sue a public entity for "money or damages" until he has presented the claim to that entity, and the entity has either acted upon or rejected the claim. Cal. Gov't Code § 945.4. The Act further provides that "[a] claim relating to a cause of action for . . . injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a). In the district court, Smith did not contest that he failed to file an administrative claim, instead arguing that he was covered under Gant's administrative claim. Even where two people suffer separate injuries from the same act or omission—which was not true of Smith and Gant—one person cannot rely on an administrative claim presented by another. *Nelson v. Cnty. of Los Angeles*, 6 Cal. Rptr. 3d 650, 661 (Cal. Ct. App. 2003). We affirm the district court's order dismissing Smith's Bane Act and false imprisonment claims against the L.A. County defendants.

3.     Jose Alexander Ventura

The district court dismissed Ventura's Bane Act and false imprisonment claims against the L.A. County defendants after concluding that Ventura failed to

exhaust his administrative remedies against these defendants.  Ventura does not address exhaustion on appeal.  We affirm the district court's order dismissing these claims.

Ventura makes the identical Bane Act claim against the San Bernardino defendants that Gant made against the L.A. County defendants—namely, that the defendants used the coercive power of law enforcement to intentionally seize and hold him in violation of his rights.  But, like Gant, Ventura did not allege any independent coercive acts by the San Bernardino defendants apart from wrongful detention.  For this reason, we affirm the district court's order granting San Bernardino summary judgment on Ventura's Bane Act claim.

The operative complaint did not assert a false imprisonment claim against the San Bernardino defendants by Ventura.  Ventura argues that the Third Amended Complaint's Third Cause of Action (Bane Act damages claim) contained a state law false imprisonment claim.  Even if the Third Cause of Action included such a claim, the Third Cause of Action did not list San Bernardino as a defendant. Ventura also argues that his false arrest claim is contained within the Fourth Cause of Action, but Ventura's Fourth Cause of Action is a §1983 claim, not a state law claim.  We therefore affirm the district court's order dismissing Ventura's Bane Act claim against the San Bernardino defendants.

8

On appeal, Ventura argues that he has a viable false imprisonment claim against the Chino defendants and the district court did not rule on the claim.  This is likely because it is unclear whether the operative complaint asserted a state law false imprisonment claim against Chino in the first place.  As with the San Bernardino defendants, Ventura argues that his state law false imprisonment claim against the Chino defendants was included in the Third and Fourth causes of action, but the Third Cause of Action does not list the Chino defendants, and the Fourth Cause of Action is a § 1983 claim, not a state law claim.  Thus, the district court did not err by failing to rule on this claim.

The judgment of the district court on the aforementioned claims is affirmed. The parties shall bear their own costs on appeal.

**AFFIRMED.**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KELVIN GANT, an individual; REGINALD LENARD SMITH; JOSE ALEXANDER VENTURA, *Plaintiffs-Appellants*, | No. 12-56080 D.C. No. 2:08-cv-05756-GAF-PJW |
| v. | |
| COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; CITY OF LOS ANGELES; CITY OF CHINO; CHINO POLICE DEPARTMENT; COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued April 9, 2014
Submitted May 19, 2014
Pasadena, California

Filed November 24, 2014

2        G<small>ANT</small> v. C<small>OUNTY OF</small> L<small>OS</small> A<small>NGELES</small>

Before: Sidney R. Thomas, Milan D. Smith, Jr.,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

---

## SUMMARY[*]

---

### Civil Rights

The panel affirmed in part and reversed in part the district court's judgment and remanded in an action brought pursuant to 42 U.S.C. § 1983 by Kelvin Gant and Jose Alexander Ventura who alleged that they were mistakenly arrested and detained based on warrants intended for other people.

The panel held that Gant failed to show that the Los Angeles defendants' failure to enter his judicial clearance, showing his prior exonerations, into the County Warrant System database violated his Fourth Amendment rights. Accordingly, the panel affirmed the district court's dismissal of Gant's Fourth Amendment claim against the Los Angeles City and County defendants.

Addressing Gant's Fourteenth Amendment wrongful detention claim, the panel held that because Gant did not allege that he told the Los Angeles County defendants that he had a judicial clearance form or that he brought the issue of mistaken identity to their attention, and because Gant was detained for the purpose of receiving process and did receive

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

a prompt hearing, the district court correctly dismissed Gant's
Fourteenth Amendment claim against the Los Angeles
County defendants.

The panel held that Ventura's Fourth Amendment
wrongful detention claims against the Los Angeles City and
County defendants and the San Bernardino defendants were
foreclosed by *Rivera v. County of Los Angeles*, 745 F.3d 384
(9th Cir. 2014). The panel further held that Ventura did not
meet his burden of showing that his mistaken arrest by the
City of Chino Police Department was more than a single,
"isolated or sporadic" incident.

Addressing Ventura's Fourteenth Amendment claim
against the San Bernardino defendants, the panel held that
Ventura failed to raise a material issue of fact about whether
defendants have a policy of not requiring fingerprint
comparisons after detainees complain they have been
mistakenly arrested or whether accessing alternate police
record systems would necessarily have revealed that Ventura
was not the warrant's true subject.

Reversing the district court's dismissal of Ventura's
Fourteenth Amendment against the Los Angeles County
defendants and the district court's dismissal of the California
Bane Act claims against the City of Chino defendants, the
panel held that (1) the conflicting evidence about whether
Ventura complained to Los Angeles County defendants that
they had the wrong person raised a genuine issue of material
fact; and (2) a trier of fact could conclude that Chino police
officers' quick, insistent questioning was intended to coerce
Ventura.

4         GANT V. COUNTY OF LOS ANGELES

**COUNSEL**

Donald W. Cook (argued) and Robert Mann, Mann & Cook
Law Offices, Los Angeles, California, for Plaintiffs-
Appellants.

Michael Allen, Lawrence Beach Allen & Choi, P.C.,
Glendale, California, for Defendants-Appellees County of
Los Angeles, Los Angeles County Sheriff's Department, and
City of Los Angeles.

Scott Eric Caron (argued), Lawrence Beach Allen & Choi,
P.C., Glendale, California, for Defendants-Appellees County
of Los Angeles, Los Angeles County Sheriff's Department,
and County of San Bernardino.

Lisa S. Berger, Deputy City Attorney, Los Angeles City
Attorney's Office, Los Angeles, California, for Defendant-
Appellee City of Los Angeles.

Jules Solomon Zeman (argued), Haight Brown & Bonesteel
LLP, Los Angeles, California, for Defendants-Appellees City
of Chino and the Chino Police Department.

James H. Thebeau (argued), Deputy County Counsel, County
of San Bernardino, San Bernardino, California, for
Defendants-Appellees County of San Bernardino and San
Bernardino County Sheriff's Department.

## OPINION

CHRISTEN, Circuit Judge:

This is a case of mistaken identity arising from the separate arrests and detentions of Kelvin Gant and Jose Alexander Ventura based on warrants intended for other people.  Appellants filed over twenty federal and state law claims alleging that various defendants issued flawed warrants, improperly arrested them, or improperly detained them.  The district court ruled against all of appellants' claims in orders granting defendants' motions to dismiss and motions for summary judgment.   We have jurisdiction pursuant to 28 U.S.C. § 1291.  We reverse the district court's judgment on Ventura's Fourteenth Amendment § 1983 claim against the L.A. County defendants and Ventura's Bane Act claim against the Chino defendants.  We otherwise affirm the district court's rulings.[1]

## BACKGROUND

The defendants in this case are the County of Los Angeles and the Los Angeles County Sheriff's Department ("the L.A. County defendants"), the City of Los Angeles and the Los Angeles Police Department ("the L.A. City defendants"), the City of Chino and the Chino Police Department ("the Chino defendants"), and the County of San Bernardino and the San

---

[1] We address Gant's Bane Act and false imprisonment claims, Ventura's Bane Act and false imprisonment claims against the L.A. County and San Bernardino defendants, and claims brought by a third appellant, Reginald Lenard Smith, in a separately-issued memorandum disposition filed concurrently with this opinion.

Bernardino County Sheriff's Department ("the San Bernardino defendants").

Two arrest warrant systems are relevant to this appeal, and a brief explanation of both is necessary to understand the basis for appellants' claims. The first is the Wanted Persons System ("WPS") operated and maintained by the California Department of Justice ("CDOJ") to record and track warrants issued by California state courts. Any California law enforcement agency can query the WPS database, but only the agency that procured a warrant can update the entry for it. The second system is a separate County Warrant System ("CWS") operated and maintained by L.A. County to track and record warrants issued by Los Angeles County courts. All Los Angeles County-based law enforcement agencies can query CWS, but, like WPS, only the agency that procures a warrant can update the entry for it in CWS.

Arrest warrants can contain a subject's name, date of birth, address, physical descriptors, and unique identifiers, including Social Security numbers and various fingerprint-based identification numbers. The CDOJ assigns a fingerprint-based Criminal Investigation and Identification ("CII") number to its warrants. Los Angeles County agencies assign a fingerprint-based "L.A. Main" number to their warrants. CII and L.A. Main numbers can be used to generate an arrestee's criminal history, which can include the subject's full name, aliases, birth date, residential addresses, and Social Security and driver's licence numbers. CII and L.A. Main numbers can also be used to generate a subject's arrest, prosecution, and conviction histories.

When a person is booked into a California jail, his or her fingerprints are taken and electronically transferred to CDOJ

through a process called "Live Scan." The CDOJ typically responds after a few minutes in one of two ways. If the arrestee's fingerprints are already on file, the subject's CII number and criminal history are sent to the arresting agency. If the arrestee's fingerprints are not on file, the CDOJ assigns the arrestee a new CII number and informs the arresting agency.

## I.  Appellants' Claims

### A.  Kelvin Gant

Kelvin Gant ("Gant") has been arrested on warrants issued for his non-identical twin brother, Kevin Gant, between five and seven times.[2] The claims Gant raised in this case stem from a mistaken arrest that occurred on April 29, 2008. Torrance police ran a warrant check in the course of questioning Gant about allegedly attempting to fraudulently obtain a refund for a movie ticket. The warrant had been obtained by the L.A. City defendants, who were responsible for inputting it into CWS. It named Gant's brother, "Kevin Thomas Gant" and included a CII number. Gant was arrested even though he showed the officer a "judicial clearance form" verifying that a warrant for "Kevin Gant" was not meant for him. Torrance police transferred Gant to the custody of the Los Angeles County Sheriff's Department.[3] In the booking

---

[2] The district court's April 26, 2011 order indicates that Gant had been arrested "about five" times. Its October 8, 2009 order indicates he has been arrested seven times.

[3] The district court rejected L.A. County's argument that Gant was never in its custody because it was contravened by documentary evidence. At his deposition, Gant testified that he was never in the custody of L.A. County, but his complaint alleges that he was, and the record indicates that

process, a Live Scan report was obtained.  It showed that Gant had a different CII number than the warrant's subject, Kevin Gant.  It also included "Kevin Thomas Gant" and "Kevin T. Gant" as aliases associated with Kelvin Gant's fingerprints.  Gant was detained overnight and released the following day after a court appearance.  Gant does not allege that he told the Los Angeles County Sheriff's department he had a judicial clearance form.

## B.  Jose Alexander Ventura

On December 13, 2007, a Chino police officer stopped Jose Alexander Ventura for a minor traffic violation.  The first fifteen minutes of the stop were audio-recorded.  An officer ran a warrant check and discovered an outstanding 1994 warrant obtained by the L.A. City defendants for "Jose Ventura."[4]  The police dispatcher described the warrant subject as a Hispanic male who was 6'1" tall, weighed 200 pounds, and had black hair and brown eyes.  Ventura showed the officer a driver's license that indicated he was 5'6" tall and weighed 180 pounds.

On the audio tape, an officer can be heard asking Ventura to step out of his vehicle.  After Ventura complied, another officer arrived and began questioning him.  The audio of this questioning recorded Ventura agreeing with an officer's

---

he was.  We construe all disputed issues of fact in favor of the non-moving party.  *See Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355, 1362 (9th Cir. 1994).

[4] The Third Amended Complaint claims the warrant was for "Jose Ventura Gonzalez Perez," but the record shows the name on the warrant was "Jose Ventura."

suggestion that he is 5'11". Ventura alleges that the officers knew he was 5'6" but coached him to "parrot back" that he was 5'11". It is clear from the audio recording that English is Ventura's second language. One of the officers also incorrectly told Ventura that the warrant includes Ventura's Social Security number.

Ventura was arrested. The Chino Police Department does not book or hold felony arrestees, but Ventura was transported to the Chino police station while an officer obtained the warrant abstract.[5] The warrant did not contain any unique identifiers such as a CII number or Social Security number. Ventura was then transported to San Bernardino's West Valley Detention Center ("WVDC"), where he was booked and remained for approximately four days.

During booking at WVDC, officials took Ventura's fingerprints using Live Scan and electronically transferred them to CDOJ. The parties dispute whether Live Scan could have been used to determine whether the warrant was meant for Ventura because the warrant for "Jose Ventura" did not include a CII number. But in any case, the San Bernardino defendants argue that the Live Scan report was not returned until January 24, 2008, approximately five weeks after Ventura was arrested. Ventura claims he told a WVDC officer that he was not the warrant's true subject, but the San Bernardino defendants deny Ventura complained that his arrest was a case of mistaken identity.

---

[5] A warrant abstract is a summary of the warrant that typically contains the warrant number; the charge; the court or agency of issuance; the subject's name, address, and description; the bail amount; and the name of the issuing magistrate or authority. Cal. Penal Code § 850.

After spending four days at WVDC, Ventura was transferred to the L.A. County jail, where he was held for two more days.  Ventura claims he protested his detention to L.A. County jail officials, but the L.A. County defendants dispute this.   On December 19, 2007, six days after his arrest, Ventura appeared before a superior court judge who ordered his release because a manual comparison showed that his fingerprints did not match the warrant subject's prints.[6]  He was given a judicial clearance form when he was released. The form states that he was 5'7" and weighed 320 pounds.

## II.  Procedural History and Claims

Appellants filed suit in September 2008.  They amended their complaint three times, claiming violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983, California's Bane Act (Cal. Civ. Code § 52.1), and other claims not relevant here.  The district court ruled against appellants in orders granting defendants' motions to dismiss and motions for summary judgment.  The motions to dismiss were decided after the Second Amended Complaint, and the summary judgment motions were decided after the Third Amended Complaint.  Plaintiffs asked the district court to reconsider its rulings dismissing certain claims, which it did.

On appeal, Gant claims that if the L.A. City and L.A. County defendants had updated CWS to reflect his judicial clearance form, the Torrance police would not have mistaken him for his brother and arrested him.  Gant argues that the failure to update CWS caused the warrant on which he was

---

[6] Ventura was scheduled to appear in court December 18, 2007.  It appears his arraignment had to be rescheduled to December 19 due to a delay caused by a medical evaluation.

arrested to violate his Fourth Amendment right to be free from unreasonable seizure. He also argues that the L.A. County defendants wrongfully detained him in violation of his Fourth and Fourteenth Amendment rights by relying on Torrance's determination that he was the warrant's intended subject without any independent verification.

Ventura's arguments on appeal primarily focus on the disparity between the physical description that appeared on his driver's license and the physical description of "Jose Ventura" on the arrest warrant. He argues that the L.A. City, L.A. County, San Bernardino, and Chino defendants all violated his Fourth Amendment rights, either on particularity or probable cause grounds; that the L.A. County, San Bernardino, and Chino defendants all violated his Fourteenth Amendment due process rights; and that the Chino defendants violated California's Bane Act.

## STANDARD OF REVIEW

A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* A complaint need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).

A district court's decision to grant summary judgment is reviewed de novo. *Szajer v. City of Los Angeles*, 632 F.3d

607, 610 (9th Cir. 2011).  We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## DISCUSSION

## I.  Section 1983 Claims

### A.  Fourth Amendment

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause . . . and particularly describing . . . the persons or things to be seized."  U.S. Const. Amend. IV.

In *Rivera v. County of Los Angeles*, 745 F.3d 384 (9th Cir. 2014), our court examined Fourth Amendment particularity and probable cause issues in claims arising from facts very similar to those in Gant's case.  The plaintiff in *Rivera* was mistakenly arrested twice, in instances twenty years apart, on a warrant meant for someone else.  *Id.* at 386–87.  Rivera's physical description closely matched the one in the warrant. *Id.* at 387.  Rivera obtained a judicial clearance form from the first arrest, but when asked to produce it during his second arrest, he could not do so.  *Id.*  He was detained for over a month after the second arrest.  *Id.*  Rivera sued Los Angeles County, the Los Angeles County Sheriff's Department, San Bernardino County, and the San Bernardino County Sheriff's Department, alleging that his Fourth Amendment rights were violated: (1) by the failure to include CII numbers in the warrant on which he was arrested; and (2) because officers

lacked probable cause to arrest him.  *Id*. at 387–89.  The district court granted the defendants' motions for summary judgment on all of Rivera's claims.  *Id.* at 387.  On appeal, our court held that the arrest warrant—which did not include a CII number—"satisfied the particularity requirement because it contained both the subject's name and a detailed physical description."  *Id.* at 388.  As to probable cause, we concluded "the deputies were not unreasonable in believing that Rivera was the subject of the warrant" because the name and birth date on the warrant matched Rivera's and the height and weight descriptors "were within one inch and ten pounds of Rivera's true size."  *Id*. at 389.

### 1.  Gant's Fourth Amendment Claims

#### a.  L.A. City Defendants

Gant resolved his claims against the Torrance police—the defendants responsible for his arrest—before this case was appealed to our court, but he appeals the dismissal of his § 1983 Fourth Amendment claim against the L.A. City defendants.  The L.A. City defendants obtained the warrant pursuant to which Gant was arrested, and, according to the Third Amended Complaint, only the L.A. City defendants had the ability to update the CWS entry for the warrant.  Unlike *Rivera*, Gant's particularity argument is not that the warrant lacked a CII number; it included one.  Rather, Gant argues that the L.A. City defendants knew he had been mistakenly arrested on six prior occasions because of the similarity between his name and his brother's name, their similar physical descriptions, and their identical dates of birth.  After numerous mistaken arrests, Gant argues the L.A. City defendants were aware the description in the warrant was constitutionally deficient, and that his rights were

violated by their failure to enter his prior exonerations into CWS.

The L.A. City defendants argue that Gant cites no authority to support his argument that the Fourth Amendment was violated by the failure to enter Gant's judicial clearance form into CWS.  They cite *Powe v. City of Chicago*, 664 F.2d 639, 646 (7th Cir. 1981), for the proposition that courts have "traditionally found a warrant that truly names the arrestee or describes him sufficiently to identify him" satisfies the Fourth Amendment's particularity requirement.  The district court, citing *Powe*, granted the L.A. City defendants' motion to dismiss after concluding that the warrant satisfied the Fourth Amendment because Gant did not allege that the warrant "failed to correctly name the proper subjects of the warrant," and because the warrant contained a CII number.

In *Rivera*, we held that the Fourth Amendment's particularity requirement was satisfied because the warrant "contained both the subject's name and a detailed physical description," even though it did not contain a CII number. *Rivera*, 745 F.3d at 388.  This is consistent with our long-standing case law defining the contours of the Fourth Amendment's particularity requirement.  *See West v. Cabell*, 153 U.S. 78, 85 (1894) ("[A] warrant for the arrest of a person charged with [a] crime must truly name him, or describe him sufficiently to identify him.").[7]  Here, because

---

[7] Gant argues that two cases, *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982), and *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986), are dispositive as to his Fourth Amendment claims.  These cases, however, address search warrants, not arrest warrants, and we are aware of no authority incorporating the rules articulated in these cases into our case law regarding the adequacy of arrest warrants.

the warrant for Kevin Gant contained his correct name, date of birth, a physical description, and a CII number, we would hold that the warrant adequately identified its true subject, were that the issue before us.  But Gant does not challenge the constitutionality of the warrant issued by the court for his brother.  The issue he raises is whether the failure of a law enforcement agency to update a warrant abstract in its computerized database violates the Fourth Amendment's particularity requirement when an individual, like Kelvin Gant, can show that the description has resulted in his mistaken arrest on approximately seven different occasions.[8]

It is undisputed that Gant had his judicial clearance form with him when he was arrested, and he showed it to the Torrance police officers.  The record shows that the Torrance Police were able to access Gant's CII number via Live Scan shortly after Gant was fingerprinted during the booking process, and Live Scan reported a CII number for Gant that was plainly different from his brother's.[9]  As the district court

---

[8] Gant alleges the L.A. City defendants caused the warrant's issuance.  Because the court that issued the warrant is not a defendant, we understand him to rely on Cal. Civ. Code § 43.55(b).  That statute provides that:

> a 'warrant of arrest regular upon its face' includes both of the following: (1) A paper arrest warrant that has been issued pursuant to a judicial order.  (2) A judicial order that is entered into an automated warrant system by law enforcement or court personnel authorized to make those entries at or near the time the judicial order is made.

[9] We cannot determine from the record whether Gant's CII number appeared on the judicial clearance form he showed to Torrance police, but the record does include a Live Scan report that was received by Torrance

noted, these different CII numbers conclusively established that Gant was not the subject of his brother's warrant.  The Torrance police, however, failed to realize this.

The outcome of Gant's Fourth Amendment claim against the L.A. City defendants might be different if the warrant for Kevin Gant did not include a CII number.  For warrants that do not contain CII numbers, or in instances where the entry of a CII number has not been sufficient, inputting notice of judicial clearance forms in law enforcement databases may be necessary to prevent repeated mistaken arrests.  But in this case, we cannot say that the L.A. City defendants violated Gant's Fourth Amendment rights; the arresting officers had access to Gant's brother's CII number and Gant's CII number on the evening of his arrest, and the warrant was sufficiently particular to rule out Gant.  Gant did not show that the failure to enter his judicial clearance form rendered the warrant abstract insufficiently particular or that the absence of such an entry was the proximate cause of his mistaken arrest.  The district court did not err by dismissing Gant's Fourth Amendment § 1983 claim against the L.A. City defendants.[10]

### b.  L.A. County Defendants

Gant asserts the same Fourth Amendment particularity claim (failure to update CWS to reflect prior exonerations)

---

police on the evening Gant was arrested.  It states: "Your subject has been identified by fingerprints as NAM/Gant, Kelvin Thomas DOB/1963[redaction] CII/A06572567."  The warrant for Kevin Gant listed his CII number as A06776321.

[10] Gant does not argue on appeal that the L.A. City defendants' failure to update CWS to reflect his prior exonerations violated his Fourteenth Amendment due process rights.

against the L.A. County defendants. This claim was properly dismissed.  The Third Amended Complaint alleged that only the agency that procures a warrant can update the computerized entry of it.  It also alleged that the L.A. City defendants, not the L.A. County defendants, obtained the warrant for Gant's brother.   The district court's order dismissing Gant's Fourth Amendment claim against the L.A. County defendants is affirmed.[11]

### 2.  Ventura's Fourth Amendment Claims

#### a.  L.A. City Defendants

The L.A. City defendants also obtained the arrest warrant for "Jose Ventura" and were responsible for inputting it into CWS and WPS.  As in *Rivera*, Ventura argues that the L.A. City defendants violated the Fourth Amendment's particularity requirement by identifying the warrant's subject in CWS and WPS without including the known CII number for the warrant's true subject.  He also argues the warrant was infirm because the L.A. Main number was not included. Ventura's claim is foreclosed by *Rivera*, which concluded that the warrant at issue there "satisfied the particularity requirement because it contained both the subject's name and a detailed physical description," even though it did not include a CII number.  *Rivera*, 745 F.3d at 388.  The district court's order dismissing Ventura's Fourth Amendment claim against the L.A. City defendants is affirmed.

---

[11] Gant argued that the L.A. County defendants violated his Fourth Amendment rights by not comparing his CII number to the CII number on the warrant.  That claim is actually a Fourteenth Amendment claim, and we address it as such, *infra*.  *Rivera*, 745 F.3d at 389–90 ("[P]ost-arrest incarceration is analyzed under the Fourteenth Amendment alone.").

### b.  Chino Defendants

Ventura argues that when the Chino defendants arrested him, they did not have probable cause to believe that he was the subject of the arrest warrant for "Jose Ventura" because of the "radical discrepancies" between the height, weight, name, and residence on Ventura's driver's license and the warrant's description of its subject.  He also argues the Chino defendants had access to his criminal history, which shows no criminal record.  The district court evaluated whether Ventura could prevail on a Fourth Amendment § 1983 claim against the Chino defendants based on the "customs and policies" standard set out in *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).  Under that standard, to prevail on a Fourth Amendment § 1983 claim against a municipal defendant or sheriff's department, a plaintiff must show: (1) that he was "deprived of [his] constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount to deliberate indifference to . . . constitutional rights; and (3) that these policies [were] the moving force behind the constitutional violations."  *Id.* at 681–82 (internal quotation marks and alterations omitted); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (local governmental entities liable under § 1983 when "action pursuant to official municipal policy of some nature caused a constitutional tort").

The district court agreed that whether the arresting officer "could have had a reasonable belief that Ventura was the warrant's subject, despite the height and weight discrepancies," was a question of fact for the jury, but it granted the Chino defendants' summary judgment motion because it decided Ventura had not raised a triable issue of

fact about whether the defendants had a policy amounting to deliberate indifference to Ventura's constitutional rights.

Whether Ventura's opposition was sufficient to survive the Chino defendants' summary judgment motion is a close question.  A Chino officer testified that Ventura's arrest was in accordance with its custom, policy, or practice.  Chino also argues that in over twenty years before Ventura's allegations, it "had not had any incident, lawsuit, or tort claim alleged against it for an improper arrest based on a factually correct warrant."  Ventura argues the Chino defendants admitted liability by conceding that his arrest was in accordance with their policies, but the Chino defendants did not concede deliberate indifference.

We agree with the district court's assessment that the question is "whether a policy that would permit an arrest on a warrant issued for someone seven inches taller and 120 pounds lighter evinces a 'deliberate indifference'" to Ventura's constitutional rights.  In *Oviatt v. Pearce*, this court explained that deliberate indifference to a person's constitutional rights occurs when the need for more or different action:

> is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.  Whether a local government entity has displayed a policy of deliberate indifference is *generally a question for the jury.*

954 F.2d 1470, 1477–78 (1992) (emphasis added) (internal citation and quotation marks omitted).

The Chino defendants' warrant arrest policy states, in pertinent part: "Warrant arrests will be made when the person has a confirmed, active warrant in the Wanted Persons System (WPS)." The district court reasoned:

> Although this policy contains no guidelines regarding how closely a suspect must match a warrant description to authorize an arrest, Ventura has put forth no evidence suggesting that this omission amounts to deliberate indifference. For example, Ventura presents no evidence that the policy has resulted in violations in the past or that it is likely to lead to future violations. It is not obvious that the policy's lack of guidelines regarding descriptors is inadequate; indeed, it is not even clear that such guidelines would be helpful.

The district court was correct that Ventura did not provide evidence that the policy has resulted in past violations or that it is likely to lead to future violations. Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Ventura did not meet his burden of showing that this mistaken arrest was more than a single, "isolated or sporadic" incident. We therefore affirm the district court's order granting summary judgment to the Chino defendants on Ventura's § 1983 Fourth Amendment claim.

### c.   San Bernardino Defendants

Ventura also challenges the order granting summary judgment on his § 1983 Fourth Amendment claim arising from his four-day post-arrest detention by the San Bernardino defendants at WVDC. *Rivera* forecloses this argument, 745 F.3d at 389–90 ("[P]ost-arrest incarceration is analyzed under the Fourteenth Amendment alone."), and we affirm the dismissal of this claim.

### d.   L.A. County Defendants

The L.A. County defendants detained Ventura for two days immediately prior to his court appearance. Ventura made identical Fourth Amendment claims against the L.A. County defendants as he did against the L.A. City defendants, arguing that they violated the Fourth Amendment's particularity requirement by identifying the warrant's subject in CWS and WPS without including known CII and L.A. Main numbers for the warrant's true subject. But the Third Amended Complaint alleged that the L.A. City defendants, not the L.A. County defendants, procured the warrant. Based on the facts alleged in the complaint, the L.A. County defendants could not have updated the databases, so we affirm the district court's order dismissing this claim.

Ventura also challenges his two-day detainment *after* arrest by the L.A. County defendants under the Fourth Amendment.  Because "post-arrest incarceration is analyzed under the Fourteenth Amendment alone," *id*., the district court did not err by dismissing this Fourth Amendment claim.

## B.  Fourteenth Amendment

Gant and Ventura challenge their post-arrest detainment under the Fourteenth Amendment.  In *Baker v. McCollan*, the Supreme Court held that "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence *after the lapse of a certain amount of time* deprive the accused of 'liberty . . . without due process of law.'" 443 U.S. 137, 145 (1979) (emphasis added).  And in *Lee*, we confirmed that wrongful detention can ripen into a due process violation, but it is a plaintiff's burden to show that "it was or should have been known [by the defendant] that the [plaintiff] was entitled to release."  250 F.3d at 683 (quoting *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993)). *Lee* did not define the point at which repeated pleas of innocence ripen into a Fourteenth Amendment violation.

We have held that a public entity can be liable under the Fourteenth Amendment for failing to "institut[e] readily available procedures for decreasing the risk of erroneous detention."  *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (plaintiff held for twelve days without hearing, court appearance, or fingerprint comparison).[12]  Both the district

---

[12] The court applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether procedural protections comport with due process.  *Fairley*, 281 F.3d at 918 n.6.  To identify what process is due, the Court considers:

court and *Rivera*, 745 F.3d at 390–91, reiterated these precedents.

### 1.  Gant's Fourteenth Amendment Claims

### a.  L.A. County Defendants

After the Torrance police arrested Gant, they transferred him into the L.A. County defendants' custody.  Gant argues the L.A. County defendants detained him in violation of his right to due process by relying on Torrance's determination that he was the warrant's intended subject without verifying this fact themselves.  But the record does not show that Gant brought his judicial clearance form to the L.A. County defendants' attention or otherwise objected to his detention by L.A. County.  Instead, he argues that the L.A. County defendants should have known he was not the person described in the warrant because Gant and his brother's non-matching CII numbers were "reflected in the documentation." We understand Gant to impliedly argue that a non-arresting agency has an affirmative duty to verify an arrestee's identity.

---

[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

A wrongful detention can ripen into a due process violation if "it was or should have been known [by the defendant] that the [plaintiff] was entitled to release." *Lee*, 250 F.3d at 683 (quoting *Cannon*, 1 F.3d at 1563). But to prevail here, Gant would have to show that he was deprived of a constitutional right under color of state law, that defendants' customs or policies amounted to deliberate indifference to constitutional rights, and that these policies were the moving force behind the violations. *Id.* at 681–82.

The district court granted summary judgment for L.A. County on Gant's wrongful detention claim because Gant was held in L.A. County custody "for the sole purpose of appearing in court." The district court observed that Gant cited "no authority indicating that a custodial agency that briefly holds a detainee while he awaits a court appearance that same day can be liable for over-detention in violation of the Fourteenth Amendment." Gant does not attempt to rebut this point on appeal, and the record indicates that Gant was only in L.A. County custody overnight and until his court appearance the afternoon the following day.

The L.A. County defendants cite *Baker v. McCollan* in support of their argument that a law enforcement agency "is under no duty to investigate the arrestee's identity, even if the arrestee complains he is not the person wanted by the warrant, and even if the agency has information in its possession that, if examined, would exonerate the arrestee." *Baker* held:

> We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a

> valid warrant but in the face of repeated
> protests of innocence will after the lapse of a
> certain amount of time deprive the accused of
> "liberty . . . without due process of law." But
> we are quite certain that *a detention of three
> days* over a New Year's weekend *does not
> and could not amount to such a deprivation*.

443 U.S. at 145 (emphasis added). *Baker* supports the L.A. County defendants' argument that brief detention on a facially valid warrant may not give rise to a due process violation depending upon the procedures the state affords, but it does not support the L.A. County defendants' much broader assertion that no liability can attach where a jailer "has information in its possession that, if examined, would exonerate the arrestee."

To resolve Gant's Fourteenth Amendment claim, we need only apply the *Mathews v. Eldridge* balancing test to the facts presented in this case. Because Gant did not allege that he told the L.A. County defendants he had a judicial clearance form or that he otherwise called this case of mistaken identity to their attention, and because Gant was detained for the purpose of receiving process and did receive a prompt hearing, the district court correctly dismissed Gant's Fourteenth Amendment claim against the L.A. County defendants.

## 2.  Ventura's Fourteenth Amendment Claims

### a.  Chino Defendants

The Chino defendants did not detain Ventura beyond his arrest.  The district court correctly concluded that the

reasonableness of their arrest of Ventura should be analyzed under the Fourth Amendment, not as a post-arrest detainment claim under the Fourteenth Amendment. *See Rivera*, 745 F.3d at 389–90. We affirm the order granting summary judgment for the Chino defendants on Ventura's Fourteenth Amendment claim.

### b. San Bernardino Defendants

In *Rivera*, we said:

> Cases holding that an incarceration violated the Due Process Clause because defendants should have known the plaintiff was entitled to release fit at least one of two categories: (1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time.
>
> But the "further investigation" cases have involved significant differences between the arrestee and the true suspect. In *Fairley*, for example, the plaintiff and the true subject of the warrant not only had different first names but also differed in weight by 66 pounds. 281 F.3d at 915.

745 F.3d at 390–91. Ventura's Fourteenth Amendment claim against the San Bernardino defendants falls into the second category. He argues that "circumstances indicated to the defendants that further investigation was warranted."

The San Bernardino defendants detained Ventura at WVDC for four days after he was arrested and before he was transferred to the custody of the L.A. County defendants. Ventura alleges that he complained to WVDC staff about his wrongful detention, and that there were very significant discrepancies between the physical descriptors on his driver's license and the physical descriptors on the warrant.  At his deposition, Ventura testified that he complained to an officer at WVDC that he was "not the person you're looking for." Ventura also testified that he complained to the arresting officer that he had "the wrong person."  Ventura argues the San Bernardino defendants could have used several means to determine whether he was the warrant's true subject, including by conducting fingerprint comparisons and by accessing "police criminal records information systems." The San Bernardino defendants respond that there is no record of Ventura's complaints, and that if he had raised such a complaint, it would have been memorialized.  They also argue that they could not have determined that Ventura was not the warrant's true subject through the means Ventura suggests.

The district court recognized there was a triable issue of fact about whether Ventura complained to the San Bernardino defendants that they had the wrong person, but the district court ruled that Ventura did not offer any evidence showing the jailers' failure to conduct a fingerprint comparison was pursuant to an official policy or practice.  In fact, the district court noted that the San Bernardino defendants filed the declaration of a custody specialist ("the Walstrom declaration") in conjunction with its summary judgment motion, and the declaration explained that San Bernardino's policy *does* require fingerprint comparisons when a detainee complains of mistaken identity.  The district court further

28          GANT V. COUNTY OF LOS ANGELES

ruled that Ventura did not show that accessing an alternate police records system would have established he was not the warrant's true subject because the lack of a criminal history, by itself, does not eliminate the possibility that a person is the subject of a warrant.

Viewing the evidence in the light most favorable to Ventura, we assume the significant discrepancies between the physical descriptors on Ventura's driver's license and the physical descriptors on the warrant did raise the concern that the wrong man was being detained, just as we assume that Ventura voiced his objection to the San Bernardino defendants—though the evidence on this point is conflicting. Ventura's Fourteenth Amendment claim against the San Bernardino defendants fails because assuming these facts to be true does not establish that San Bernardino's failure to investigate Ventura's complaint was the result of an official policy or practice.

We agree with the district court that Ventura did not raise a material issue of fact about whether the San Bernardino defendants had a policy of not requiring fingerprint comparisons after detainees complain they have been mistakenly arrested. Ventura failed to controvert evidence that it was the San Bernardino defendants' practice to investigate a warrant arrestee's claim of wrongful identity. Further, "[t]hat officials apparently failed to implement [a] policy properly in this one instance is not sufficient for" the San Bernardino defendants to be liable. *Rivera*, 745 F.3d at 389. After reviewing the record, we also agree with the district court that Ventura did not show that accessing alternate police record systems would necessarily have revealed that Ventura was not the warrant's true subject. The lack of a criminal history would not have established that

Ventura was being erroneously detained, because warrants are sometimes issued for individuals with no prior offenses, and individuals without criminal histories can have CII numbers.  Indeed, Ventura has no criminal history, but because he has been a foster parent, and because he is a lawful immigrant who has been given political asylum, he has a CII number.  We therefore affirm the district court's order granting summary judgment for the San Bernardino defendants on Ventura's Fourteenth Amendment claim.

### c.  L.A. County Defendants

Ventura argues that the L.A. County defendants violated his Fourteenth Amendment rights because they detained him even though they should have known that he was not the subject of the "Jose Ventura" warrant.  The L.A. County defendants detained Ventura for two days while he waited for a court appearance.  In granting summary judgment for the L.A. County defendants, the district court found "no evidence from which a reasonable jury could conclude that Ventura complained to any L.A. County official that he was not the subject of the warrant."  The district court based this finding on Ventura's deposition testimony; when asked if he had ever complained to anyone while at the L.A. County Jail, Ventura testified, "I decided not to say anything because anyway I would be ignored."  Asked the follow-up question, "So you made no complaints to anybody at the Los Angeles County Jail; correct?"  Ventura responded, "Not to anyone."  But Ventura's deposition also included his statement that he told the woman who took his fingerprints at the L.A. County Jail (in Spanish), "I think they're confused about me.  I'm not the person you're looking for."  The district court reasoned that "[s]tanding alone, this [statement] might be enough to raise a triable issue of fact as to whether Ventura complained to

anyone such that County officials would have had a duty to
verify his identity," but because the record included
Ventura's other sworn and unequivocal statements, the court
concluded that there was not a triable issue of fact about
whether Ventura complained his arrest was a mistake.  The
district court dismissed Ventura's Fourteenth Amendment
claim against the L.A. County defendants after applying the
*Mathews v. Eldridge* balancing test and concluding, "due
process does not require a custodial agency to confirm a
detainee's identity where the detainee does not complain that
he has been wrongfully incarcerated."

Ventura argues on appeal that the district court's decision
on this point is inconsistent with the summary judgment
standard.  We agree.  The conflicting evidence about whether
Ventura complained to the L.A. County defendants that they
had the wrong person raises a genuine issue of material fact.
We therefore reverse the district court's order dismissing
Ventura's Fourteenth Amendment claim against the L.A.
County defendants.

**II.  Bane Act Claim**

Ventura asserts a Bane Act claim against the Chino
defendants.  California's Bane Act creates a cause of action
when a defendant "interferes by threats, intimidation, or
coercion, or attempts to interfere by threats, intimidation, or
coercion, with the exercise or enjoyment . . . of rights secured
by the Constitution or laws of the United States, or of the
rights secured by the Constitution or laws of [California]."
Cal. Civ. Code § 52.1(a), (b).  Under California law, public
entities are liable for actions of their employees within the
scope of employment, Cal. Gov't Code § 815.2(a), but public
entities are immune from liability to the extent their

employees are immune from liability, Cal. Gov't Code § 815.2(b).  An officer is not liable for "an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." Cal. Civil Code § 43.55(a).  *Rivera* discussed these statutory provisions, cited *Lopez v. City of Oxnard*, 254 Cal. Rptr. 556 (Cal. Ct. App. 1989), and relied on statutory immunity in affirming the district court's order granting summary judgment on Rivera's Bane Act claim.  *Rivera*, 745 F.3d at 393.

Lopez was arrested in another case of mistaken identity. The *Lopez* court held that the sheriff's department that jailed Lopez was not liable for false imprisonment, despite failing to consider his "disposition sheet,"[13] because jail personnel "are entitled to rely on process and orders apparently valid on their face," 254 Cal. Rptr. at 560, and the person named in the warrant had "the same name, birth date, address and physical description" as Lopez, *id.* at 557.

As we have noted, unlike Lopez, Ventura did not come close to matching the physical description in the subject warrant, and he argued in the district court that the Chino police encouraged him to "parrot back" that was 5'11", not 5'6" as stated on his driver's license.  He repeats the same argument on appeal.  There is limited Bane Act precedent defining what constitutes "coercion" independent from that which is inherent in a wrongful arrest, but *Shoyoye v. County of Los Angeles* indicates that such conduct must be "intentionally coercive and wrongful, i.e., a knowing and

---

[13] The disposition sheet seems to have been comparable to the judicial clearance form given to Gant.  254 Cal. Rptr. at 557.

blameworthy interference with the plaintiffs' constitutional rights."  137 Cal. Rptr. 3d 839, 850 (Cal. Ct. App. 2012). Considering the audio tape of Ventura's arrest in the light most favorable to him, we conclude the officers' actions raise a genuine issue of fact regarding whether the officers coerced Ventura into saying he was 5'11".  First, the audio tape memorializes that the dispatcher told the officer who pulled Ventura over that the true warrant subject was 6'1".  Second, the driver's license Ventura produced when he was stopped recorded his height at 5'6".  The most temporally proximate measure of Ventura's stature, which appears on the judicial clearance form he received just six days after this arrest, shows his height as 5'7" and his weight as 320 pounds. People gain and lose weight, but they do not shrink six or seven inches in height.[14]  Third, one of the arresting officers told Ventura that the warrant included his Social Security number; even though, as the Chino defendants' appellate brief concedes,"[t]he warrant contained no numeric identifiers, such as [a] Social Security number."  Given these circumstances, a trier of fact could conclude that the officers' quick, insistent questioning was intended to coerce Ventura into stating that he was 5'11".  We therefore reverse the district court's order granting the Chino defendants' summary judgment motion on Ventura's Bane Act claim.

---

[14] San Bernardino claims that the only objective measurement of Ventura's height was made by defendants at Ventura's deposition, when Ventura allegedly measured 5'10".  This was an estimate, at best.  It was made by observing Ventura's approximate height in relation to a videographer's background screen at his deposition, and then using a measuring tape after Ventura left the room to measure Ventura's "approximate height based on our observation as to how tall Plaintiff Ventura was compared to the screen behind him each time he stood."

## CONCLUSION

We **REVERSE** the orders dismissing Ventura's § 1983 Fourteenth Amendment claim against the L.A. County defendants and his Bane Act claim against the Chino defendants.  In all other respects, we **AFFIRM** the judgment of the district court.  We **REMAND** this case to the district court for proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.