**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444; (213) 252-0091 facsimile
manncook@earthlink.net

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN GANT, REGINALD LENARD SMITH, JOSE ALEXANDER VENTURA, individually and as class representatives<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, ETC., ET AL.,<br><br>Defendants. | Case No. CV08-5756 SVW (PJWx)<br><br>**PLAINTIFF JOSE ALEXANDER VENTURA'S MEMORANDUM IN OPPOSITION TO LA COUNTY DEFENDANTS' "SUPPLEMENTAL BRIEF" (DOC. 236)**<br><br>Date: 5/11/15<br>Time: 1:30 p.m.<br>Ctrm: 6 (Spring St.) |

00103197.WPD

## I. Evidence Establishes That LA County Jail Officials Wrongly Incarcerated Plaintiff On A Warrant Meant For Another.

When County[1] jail officials took custody of Plaintiff Mr. Ventura, jail personnel knew the following:

● Warrant #09752302 identified its subject as 6'1" and weighing 200lbs; Plaintiff was 5'6" and weighed 320 lbs. That is, Plaintiff was seven inches shorter and 120 pounds heavier. Exhibit A to 4/20/15 Cook decl. (doc. 240); *Gant v. County of Los Angeles*, 772 F.3d 608, 613 (9th Cir. 2014);

● Plaintiff Mr. Ventura was complaining he was not the warrant's intended subject, that the police had arrested the wrong man. Jail officials, however, ignored his complaints and did no investigation. *Gant v. County of Los Angeles*, 772 F.3d 608, 622-23 (9th Cir. 2014); 12/2/10 Sivard depo. 17:2-24 (Exhibit G to 4/20/15 Cook decl. (doc. 240);

● The subject of Warrant #09752302 had been arrested and convicted of a felony violation of Cal. Health & Safety Code §11351 (possession of narcotics for sale). 4/20/15 Cook decl. ¶3 & Exhibit A thereto (doc. 240). Thus, jail officials knew the subject of Warrant #09752302 had, on his fingerprint-verified criminal record, the fact of the felony §11351 charge. Cal. Penal Code §§ 13127, 13150 (arresting agency must forward to the California Department of Justice within 72 hours of booking, the felony arrestee's *fingerprints*).

● Plaintiff Mr. Ventura's fingerprint-verified criminal history was available to County jail officials in *seconds*. *Gant v. County of Los Angeles*, 772 F.3d 608, 611-12 (9th Cir. 2014); Williams depo. 38:17-21 (Exhibit B to 4/20/15 Cook decl. [doc. 240]).

---

[1] As used herein "County" refers to Los Angeles County and its Sheriff's Department. The County of San Bernardino and its Sheriff's Department, although involved in Mr. Ventura's incarceration, are no longer defendants.

Had officials not ignored Mr. Ventura's complaints but instead took the few seconds to retrieve his criminal history, officials would have had verification that Mr. Ventura could not be the subject of Warrant #09752302. Williams depo. 38:2-9, 31:21-33:12 (Exhibit B to 4/20/15 Cook decl. [doc. 240]). (Mr. Ventura had no criminal record).[2]

The jail officials' failure to investigate Mr. Ventura's complaint of wrongful incarceration on another person's warrant, violated Mr. Ventura's 14th Amendment liberty interest. Or as explained by Judge Feess in this case in his 2009 Order wherein he denied (in part) the County's Rule 12(b)(6) motion:

> In this case, Plaintiffs allege that, even if the warrants were facially valid, they were overdetained in violation of their due process liberty interest. They contend that LASD could have easily determined their identity in a relatively short period of time, but that policies to assure a quick determination of a detainee's identity have not been implemented and that the failure to do so indicates deliberate indifference to their constitutional liberty interest. On this point, Ninth Circuit law is clear and establishes that a plaintiff may assert a due process violation where the detaining agency fails expeditiously to undertake fingerprint comparisons or other simple identification procedures to decrease the risk of erroneous detention.

---

[2] Defendants claim, falsely, that Plaintiff contends defendants were required to conduct an "exhaustive search of all available law enforcement record databases." Supplemental Brief 9:2-4 (doc. 236 @ 15). As the evidence cited above shows, it would have taken but *seconds* to generate Plaintiff's fingerprint-verified criminal history, a history which would have established Mr. Ventura could not be the warrant's intended subject.

10/8/09 Order @ 10 (doc. 94); *see also Gant v. County of Los Angeles*, 772 F.3d 608, 620 (9th Cir. 2014) ("A wrongful detention can ripen into a due process violation if 'it was or should have been known (by the defendant) that the (plaintiff) was entitled to release.' " [*quoting Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001)]).

**II.  The County Defendants Are Liable For Failing To Institute Readily Available Procedures For Decreasing The Risk Of Wrongful Incarceration.**

In this case the Ninth Circuit stated:

> We have held that a public entity can be liable under the Fourteenth Amendment for failing to "institut(e) readily available procedures for decreasing the risk of erroneous detention."

*Gant v. County of Los Angeles*, 772 F.3d 608, 619 (9th Cir. 2014) (*quoting Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)).

Here, evidence shows that jail officials' refusal to take a few seconds to investigate Plaintiff Mr. Ventura's complaints was pursuant to a long standing jail practice or custom of indifference to wrongful incarcerations:

● Notwithstanding defendants' written policy provisions stating that a prisoner's complaint of incarceration on another person's warrant be investigated, *in fact* jail officials rarely investigate complaints. Indeed, evidence suggests it is extremely unlikely that jail officials will initiate an investigation when a person complains of wrongful incarceration on another person's warrant. 6/8/11 Cook decl. ¶¶27-28 filed in *Rivera v. County of Los Angeles*, CV10-1861 PSG (doc. 85) (see pp. 13-14 of the Request for Judicial Notice filed 4/20/15 [doc. 239]);

● Besides Mr. Ventura, numerous other individuals have testified that County officials ignored these individuals' complaints of wrongful incarceration on a warrant meant for another, and conducted no investigation. 6/8/11 Cook decl.,

*supra*, ¶24(A)-(I); Declarations of Reginald Lenard Smith and James E. Green etc., filed 4/20/15 (doc. 241);

● Even where it is clear from the face of the warrant that the prisoner cannot be the person the warrant describes (because of non-matching names, birth dates and fingerprints), jail officials still will *not* investigate but instead ignore the official information establishing the wrongfulness of the incarceration. Sivard 2/20/15 depo. 22:21-24:15, 27:5-28:14, 30:4-20 (Exhibit C to 4/20/15 Cook decl. (doc. 240)).

Further evidence of defendants' deliberate indifference is reflected in what happens after a person is exonerated. Even though a court has declared the person is not the warrant's intended subject, and even though defendants' written policy states that the judicial exoneration information must be entered into the County's warrant database so as to prevent future wrongful incarcerations, CWS Warrant Manual Part V(F) pp. 24-25,[3] in fact the exoneration information is *never* entered. 2/20/15 Holliday depo. 41:19-43:23 (Exhibit E to 4/20/15 Cook decl); see also 4/20/15 Cook decl. ¶9(A)-(B) (No exoneration information entered after Mr. Ventura was exonerated; no exoneration entered after another prisoner was exonerated some *six* times on another person's warrant).

Then there is the Sheriff's Department Task Force, created in December 2011 to supposedly address the problem of wrongful incarcerations. The Task Force's conclusion? Defendants' policies and practices were fine and not the cause of the problems. The long standing practice of *not* updating the County's warrant database with judicial exonerations was not even acknowledged, let alone addressed. According to the Task Force, the fault for the wrongful incarcerations all laid with outside agencies the

---

[3] See Exhibit D to 4/20/15 Cook decl.

County jail relies on to identify prisoners the County jail accepts. 4/20/15 Cook decl. ¶10 (doc. 240).

The forgoing evidence suffices to establish the County defendants' §1983 liability for the violation of Mr. Ventura's 14th Amendment liberty interest. The evidence reflects similar conduct by numerous County officials over time, thereby suggesting a long standing practice or custom. It does not matter than some evidence involves events arising after Plaintiff's December 2007 incarceration. *Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997) ("Viewing the evidence in the light most favorable to Henry, the declarations of May and Burns, Henry's statements about the *threats and actions of a large number of officials at different times* over the course of a night and the following day, and the medical record are sufficient to raise genuine issues of material fact as to the municipal liability claim." (Emphasis added).

In citing and quoting with approval the Fifth Circuit's decision in *Grandstaff v. City of Borger*, 767 F.2d 161 (9th Cir. 1985), the Ninth Circuit in *Henry* stated:

> In *Grandstaff*, the Fifth Circuit affirmed a jury verdict holding the City of Borger, Texas, liable when members of its police force mistook an innocent person for a fugitive and killed him. At the outset, the *Grandstaff* court noted that isolated instances of official misconduct are insufficient to establish municipal liability under *Monell*. 767 F.2d at 171. *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). It also recognized that the existence of the city policy at issue - that of deliberate indifference to the "dangerous recklessness" of its police department - must be inferred circumstantially from the conduct of individual officers and the police chief, and then explained that the plaintiffs had failed to point to even a single prior incident of police misconduct to

serve as evidence of the existence of such a policy. *Id.* at 171. All that the plaintiffs had proven, the court stated, was that the conduct of the six officers comprising one shift of the Borger police force acted during a single night in ways that displayed a disregard for human life and safety. *Id.* Nevertheless, the court upheld the jury verdict against the city, concluding that the police chief's failure to respond to the situation or to make changes in order to prevent recurring violations evidenced the city's preexisting policy of deliberate indifference to the dangerous recklessness of its police officers. *Id.*

132 F.3d at 519.

A similar holding was reached in *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir.1986) ("Policy or custom may be inferred if, after [constitutional violations], ... officials took no steps to reprimand or discharge the [prison] guards, or if they otherwise failed to admit the guards' conduct was in error.") (citation omitted).

## III.   Defendants' Arguments Are Without Merit.

Defendants first argue Plaintiff cannot prevail because, defendants claim, there is no evidence that had there been an investigation it "would [] have conclusively verified" Plaintiff Mr. Ventura was not the subject of Warrant #09752302. Supplemental Brief 9:4-7 (doc. 236 @ 15). The argument fails because it ignores (a) defendants knew there were serious discrepancies on height and weight (5'6" & 320 lbs [Plaintiff's] / 6'1" & 200 lbs [warrant subject]), (b) defendants knew the warrant's subject had a criminal history of felony arrest and conviction of violating Cal. Health & Safety Code §11351, and (c) defendants knew they could have retrieved Plaintiff's fingerprint-verified criminal history in *seconds*, a history defendants knew or should have known would be dispositive on whether Mr. Ventura was the subject of Warrant #09752302.

Defendants' next argument is that there is no evidence that the failure to investigate is the result of a policy, custom or practice. Supplemental Brief 11:4-16:21 (doc. 236 @ 17-22). Defendants further argue that Plaintiff's "statistical evidence" is meaningless because (a) other judges have supposedly rejected it and (b) the County jail has many, many prisoners, thus "it is simply not feasible to independently verify or double check the decision of an arresting agency to book a particular inmate on a warrant each and every time an agency brings such an individual to the jail." *Id.*, 11:20-23 (doc. 236 @ 17).

First, what other judges have done or not done in other cases on *different* evidence is, Plaintiff submits, unhelpful. For example, were the decision of the district judge in *Reed v. County of Los Angeles*, 800 F.Supp.2d 1102 (C.D. Cal. 2011) truly persuasive and/or dispositve as defendants argue to this Court, presumably the Ninth Circuit in this case would have said so since, per defendants' briefing to the Ninth Circuit, the *Reed* decision (and others like it) terminated the case against the County defendants.[4]

Second, the baseline is not the number of *all* prisoners processed through the County jail; the baseline are those judicially exonerated as *not* being the warrant's subject. It is that much smaller group for whom one would expect they would have complained -- for 2006 through 2010, just over 1,400 prisoners were judicially determined to have been incarcerated on another person's warrant. Hence, for this smaller number one would expect many investigations. 2/20/15 Sivard depo. 38:20-39:10 (Exhibit C to 4/20/15 Cook decl. [doc. 240]) (Sivard, defendants' Rule 30(b)(6) designed

---

[4] Along with *Beed v. County of Los Angeles*, 2007 WL 1723717 (C.D. Cal. 2007) and *Reyes v. City of Glendale*, 2009 WL 2241602 (C.D. Cal. 2009), the County defendants cited and argued *Reed* to the Ninth Circuit in this case. See County defendants' Answering Brief filed 4/24/13 in No. 12-56080. The Ninth Circuit apparently rejected defendants' proposition for the *Gant* decision never mentions *Beed*, *Reyes* or *Reed*.

agent and a member of the Sheriff's Department's Task Force that investigated the problem of wrongful incarceration on another's warrant, testified he would expect those who were exonerated to have complained and furthermore, those complaints should have generated investigations). Yet the facts are that Sheriff's records report only *three* investigations for the 1,408 prisoners wrongly incarcerated on others' warrants. 4/20/15 Cook decl. ¶7(B) (doc. 240). A reasonable inference one can draw here is not that only three prisoners complained; rather, it is that many if not most complained but their complaints were simply ignored. E.g., Ricardo Rivera Reyes, Phillip Reed, Kelvin Gant, John Fairley, Frederick Owens, Jerome Clemmons, Santiago Ibarra Rivera, Reginald Lenard Smith, Ernesto Rodriguez and James Green (4/20/15 Cook decl. ¶8 (doc. 240).

**IV. Conclusion.**

For the forgoing reasons defendants' motion presented under the guise of a "Supplemental Brief" should be denied.

DATED: April 20, 2014

                        **DONALD W. COOK**
                        Attorney for Plaintiffs

By _____
      Donald W. Cook