1  MICHAEL D. ALLEN, State Bar No. 198126
   E-mail: mallen@lbaclaw.com
2  SCOTT E. CARON, State Bar No. 227871
   E-mail: scaron@lbaclaw.com
3  LAWRENCE BEACH ALLEN & CHOI, PC
   100 West Broadway, Suite 1200
4  Glendale, CA 91210-1219
   Telephone No. (818) 545-1925
5  Facsimile No. (818)-545-1937

6  Attorneys for Defendants
   COUNTY OF LOS ANGELES and
7  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12 KELVIN GANT, et al.,                    )  Case No. CV 08-05756 SVW (PJWx)
                                           )
13                                         )  Hon. Stephen V. Wilson
                                           )
14         Plaintiffs,                     )  **REPLY TO PLAINTIFF JOSE**
                                           )  **ALEXANDER VENTURA'S**
15      vs.                                )  **MEMORANDUM IN**
                                           )  **OPPOSITION TO L.A. COUNTY**
16                                         )  **DEFENDANTS' SUPPLEMENTAL**
   COUNTY OF LOS ANGELES, et al,           )  **BRIEF; DECLARATION OF**
17                                         )  **SCOTT E. CARON AND**
                                           )  **EXHIBITS**
18         Defendants.                     )
                                           )
19                                         )  [Fed. R. Civ. Proc. 56]
                                           )
20                                         )  Date:      May 11, 2015
                                           )  Time:      1:30 p.m.
21                                         )  Courtroom  6
                                           )
22                                         )
                                           )
23                                         )
                                           )
24                                         )
   _____    )
25

26 TO THE HONORABLE COURT AND TO ALL INTERESTED PARTIES AND

27 THEIR ATTORNEYS OF RECORD:

28 //

                                   1

Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT hereby submit the following Reply to Plaintiff Jose Alexander Ventura's Memorandum in Opposition to their Supplemental Memorandum, filed in support of their motion for summary adjudication.[1]

DATED:  April 28, 2015          LAWRENCE BEACH ALLEN & CHOI, PC

                                    s/  Scott E. Caron
                                   Scott E. Caron
                              Attorneys for Defendants
                              COUNTY OF LOS ANGELES and
                              LOS ANGELES COUNTY SHERIFF'S
                              DEPARTMENT

---

[1] To the extent the Court construes Plaintiff's opposition and Defendants' reply as being governed by Local Rules 7-9 and 7-10, and as required to be filed and served, respectively, at least 21 days and 14 days prior to the hearing date, Defendants must point out that the opposition was filed two days late – after the close of business on Tuesday, April 21.  Defendants have filed this reply at the earliest possible time after Plaintiff's untimely opposition was filed, less than seven days after the opposition was filed and within the 7-day time period contemplated by the Local Rules.  The timing of Defendants' reply was forced by Plaintiff's untimely opposition, which prejudiced Defendants.  To the extent the Court is inclined not to consider Defendants' reply due to its having been filed and served 13 days prior to the hearing, Defendants request that the Court also not consider Plaintiff's untimely opposition, which created the prejudice.

1

## TABLE OF CONTENTS

**Page**

2

3   MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

4   I.   SUMMARY ADJUDICATION IS APPROPRIATE BECAUSE THE
         NINTH CIRCUIT HAS ALREADY HELD THAT ANY ALLEGED
5        FAILURE TO REVIEW PLAINTIFF'S CRIMINAL HISTORY
         INFORMATION DID NOT VIOLATE HIS FOURTEENTH
6        AMENDMENT RIGHTS ..............................................................................1

7   II.  PLAINTIFF HAS PRESENTED INSUFFICIENT EVIDENCE THAT
         ANY ALLEGED INFRINGEMENT OF HIS CONSTITUTIONAL
8        RIGHTS WAS, OR COULD HAVE BEEN, CAUSED BY A POLICY
         PRACTICE, OR CUSTOM OF THE LOS ANGELES COUNTY
9        DEFENDANTS ............................................................................................6

10  III.  CONCLUSION..............................................................................................15

11  DECLARATION OF SCOTT E. CARON .............................................................16

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**TABLE OF AUTHORITIES**

<u>Page(s)</u>

Federal Cases

*Barry v. Fowler*,
902 F.2d 770 (9th Cir. 1990) ....................................................................11

*Edie v. Baca*,
2009 WL at 3417844 (C.D. Cal. 2009) .......................................................3

*Gant v. County of Los Angeles*,
594 Fed. Appx. 335 (9th Cir. 2014)........................................................7, 12

*Gant v. County of Los Angeles*,
772 F.3d 608 (9th Cir. 2014) ............................................................. passim

*Gant*,
supra, 765 F.Supp.2d at 1255 .....................................................................3

*Garamendi v. Altus Finance SA*,
282 F.R.D. 270 (C.D. Cal. 2012).............................................................3, 4

*Hanover Ins. Co. v. American Engineering Co.*,
105 F.3d 306 (6th Cir. 1997) ...................................................................2, 3

*Henry v. County of Shasta*,
132 F.3d 512 (9th Cir. 1997) ....................................................................14

*Hernandez v. Sheahan*,
455 F.3d 772 (7th Cir. 2006) ....................................................................12

*Matthews v. NCAA*,
179 F.Supp.2d 1209 (E.D. Wash. 2001)......................................................4

*Reed v. Baca*,
584 Fed. Appx. 880 (9th Cir. 2014)..............................................................7

*Reed v. Baca*,
800 F.Supp.2d 1102 (C.D. Cal. 2011) ...................................................13, 17

*Reyes v. City of Glendale*,
2009 WL 2241602  (C.D. Cal. 2009) ......................................................7, 13

*Rivera v. County of Los Angeles*,
745 F.3d 384 (9th Cir. 2014) .....................................................................7

*Trevino v. Gates*,
99 F.3d 911 (9th Cir. 1996) .......................................................................7

*U.S. v. Cote*,
51 F.3d 178 (9th Cir. 1995) ....................................................................2, 3

*United States v. Lummi Indian Tribe*,
235 F.3d 443 (9th Cir. 2000) ......................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **SUMMARY ADJUDICATION IS APPROPRIATE BECAUSE THE NINTH CIRCUIT HAS ALREADY HELD THAT ANY ALLEGED FAILURE TO REVIEW PLAINTIFF'S CRIMINAL HISTORY INFORMATION DID NOT VIOLATE HIS FOURTEENTH AMENDMENT RIGHTS.**

As to the question of whether Defendants violated Plaintiff's Fourteenth Amendment rights, Plaintiff's primary contention is that Defendants could, and should, have accessed his criminal history in response to his alleged complaints of mistaken identity.  Plaintiff is precluded by the Ninth Circuit's opinion in *Gant v. County of Los Angeles*, 772 F.3d 608 (9th Cir. 2014) from asserting this contention.

In its opinion in this case, the Ninth Circuit held that a review of criminal history records in December 2007, when Ventura was detained by the Los Angeles County Defendants on the warrant, would not have led law enforcement to conclude that he was not the warrant subject, and that San Bernardino County's failure to review his criminal history information (prior to his being transferred to Los Angeles County custody) did not violate his Fourteenth Amendment rights. *Gant, supra*, 772 F.3d at 622 ("[W]e also agree with the district court that Ventura did not show that accessing alternate police record systems would necessarily have revealed that Ventura was not the warrant's true subject. The lack of a criminal history would not have established that Ventura was being erroneously detained, because warrants are sometimes issued for individuals with no prior offenses, and individuals without criminal histories can have CII numbers.").[2]   The Ninth Circuit's conclusion on this point (that an alleged failure to review Plaintiff's

---

[2] The Ninth Circuit affirmed this Court's ruling on summary judgment, which was similar. *See Gant v. County of Los Angeles*, 765 F.Supp.2d 1238, 1255-1256 (C.D. Cal. 2011) ("Ventura's lack of a criminal history alone . . . would not confirm that Ventura was not the subject of the warrant.").

criminal history is insufficient to state a claim for violation of Fourteenth Amendment rights) is now the law of this case, and this Court cannot reach a contrary conclusion. *See, e.g., U.S. v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995); *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997). In order to show that the Los Angeles County Defendants violated his Fourteenth Amendment rights by not purportedly conducting an investigation into his identity, then, Plaintiff must show that the Los Angeles County Defendants had access to other records, which were not available to the San Bernardino County Defendants, and which would necessarily have led to the conclusion that he was not the warrant subject and would have resulted in Ventura's exoneration and release on the warrant.

The facts and procedural history leading to the Ninth Circuit's conclusion that a review of criminal history would not have resulted in Ventura's exoneration and release are well established in the record. In 2010, the San Bernardino County Defendants brought a motion for summary judgment in this case, arguing that their detention of Plaintiff Ventura did not infringe on Ventura's Fourteenth Amendment rights. Plaintiff opposed arguing that, as of December 13, 2007, Plaintiff's criminal history did not include any arrests or prosecutions and that, had the San Bernardino County Defendants run Plaintiff's criminal history through the California Law Enforcement Telecommunications System ("CLETS"), it would have been apparent to them that he was not the warrant subject. (*See* Declaration of Scott E. Caron ("Caron Decl.") at ¶¶ 2-3; Exhibits A & B.) To support this argument, Plaintiff cited the same deposition testimony of Johanna Williams that he has cited in his Opposition Memorandum filed on April 20. (*Id.*) In reply, the San Bernardino Defendants argued that Ms. Williams also testified that the only person in CLETS with the same name and date of birth that are listed on the warrant is Plaintiff Ventura himself and that, therefore, a review of criminal history records, using the name and date of birth on the warrant, would not have led to the conclusion that

1   Ventura was not the warrant subject.  (Caron Decl. at ¶ 4; Exhibit C.)

2          This Court agreed with the San Bernardino Defendants, holding that

3   "Ventura's lack of a criminal history alone . . . would not confirm that Ventura was

4   not the subject of the warrant," and granting summary judgment in favor of the San

5   Bernardino Defendants on that ground.  *Gant*, *supra*, 765 F.Supp.2d at 1255-1256.

6   The Ninth Circuit affirmed summary judgment, holding that "[t]he lack of a

7   criminal history would not have established that Ventura was being erroneously

8   detained."  *Gant*, *supra*, 772 F.3d at 622.

9          The Ninth Circuit's holding on this issue is binding, and constitutes the law

10  of the case.   The law of the case doctrine requires this Court to abide by the

11  conclusions reached by the Ninth Circuit in the same case.  *See, e.g.*, *Cote*, *supra*,

12  51 F.3d at 181); *Garamendi v. Altus Finance SA*, 282 F.R.D. 270, 273 (C.D. Cal.

13  2012); *Edie v. Baca*, 2009 WL at 3417844 *4 (C.D. Cal. 2009) ("**when a court**

14  **decides upon a rule of law, the decision continues to govern the same issue in**

15  **subsequent stages of the same case**"); *Hanover Ins. Co.*, *supra*, 105 F.3d at 312.

16  Although there are exceptions to the law of the case doctrine, none apply here.[3]

17  The question at hand (whether law enforcement violated Plaintiff's constitutional

18  rights by not accessing his criminal history in response to his alleged complaints of

19  mistaken identity) was decided by the Ninth Circuit in *Gant*, and the Ninth Circuit

20

21  _____

22  [3] The exceptions are as follows: "'(1) the first decision was clearly erroneous; (2) an

23  intervening change in the law occurred; (3) the evidence on remand was
    substantially different; (4) other changed circumstances exist; or (5) a manifest

24  injustice would otherwise result.'"  *Edie*, *supra*, 2009 WL at 3417844 *4 (quoting
    *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452-453 (9th Cir. 2000).  As set

25  forth herein, Plaintiff has not submitted or even suggested that new evidence exists;

26  rather, Plaintiff has submitted the very same evidence he submitted in opposition to
    San Bernardino County's motion.  Nor has Plaintiff argued that there has been a

27  change in the law, or that a "manifest injustice" would result from application of the

28  Ninth Circuit's holding to later proceedings in this case.

1  answered the question in the negative.  It would be an abuse of discretion for this
2  Court to reach a conclusion that is contrary to the holding of the Ninth Circuit in
3  *Gant*.  *Garamendi*, *supra*, 282 F.R.D. at 273; *Matthews v. NCAA*, 179 F.Supp.2d
4  1209, 1217-1218 (E.D. Wash. 2001)  The higher Court's holding forecloses any
5  claim by Ventura that the Los Angeles County Defendants infringed on his
6  Fourteenth Amendment rights by not reviewing his criminal history.

7      In light of the Ninth Circuit's holding, for Ventura to overcome summary
8  adjudication and show that the Los Angeles County Defendants violated his
9  Fourteenth Amendment rights, it is therefore not enough for Ventura to simply
10  show that the Los Angeles County Defendants had access to his criminal history
11  and did not review it; rather, he would be required to show, at the very least, that
12  the Los Angeles County Defendants had access to other information **the San**
13  **Bernardino Defendants did not have access to**, and did not review it.

14      The only evidence Plaintiff points to in an effort to establish that the Los
15  Angeles County Defendants infringed upon his Fourteenth Amendment rights,
16  however, is the very same deposition testimony of Johanna Williams Plaintiff relied
17  upon and cited in his unsuccessful opposition to the San Bernardino County
18  Defendants' motion, and which both this Court and the Ninth Circuit rejected in
19  ruling on San Bernardino County's motion.  Plaintiff's opposition (at least as to the
20  question of whether Defendants infringed on his Fourteenth Amendment rights) is
21  entirely based on the contention that Defendants could have reviewed his criminal
22  history and did not do so; Plaintiff makes no other contention to support his
23  argument that his Fourteenth Amendment rights were violated.[4]

---

25  [4] Plaintiff states the following in the opposition: (1) "Plaintiff Mr. Ventura's
26  fingerprint-verified criminal history was available to County jail officials in
27  seconds" (Opposition at 2:23-25); (2) "Had officials not ignored Mr. Ventura's
28  complaints but instead took [sic] the few seconds to retrieve his criminal history,
officials would have had verification that Mr. Ventura could not be the subject of
[the ] warrant" (Opposition at 3:1-3); (3) ". . . it would have taken but seconds to

1       In other words, **Plaintiff makes the same argument here that was rejected**

2   **by this Court and by the Ninth Circuit in connection with San Bernardino's**

3   **motion for summary adjudication.**   Plaintiff does not contend that the Los

4   Angeles County Defendants had access to any documents or information the San

5   Bernardino County Defendants did not have access to.   Plaintiff also does not rely

6   on any evidence that he did not rely upon in his failed opposition to the San

7   Bernardino County Defendants' motion for summary judgment.   Plaintiff is, in

8   essence, attempting to re-litigate an issue that has already been decided by the Ninth

9   Circuit. In light of the Ninth Circuit's holding, this is not a valid argument, and it

10   should be rejected.

11       Plaintiff's contention that Defendants knew there was a height and weight

12   difference between Plaintiff and the warrant description, and that Plaintiff was

13   complaining about being the wrong person (*see* Opposition at 2:4-14), does not

14   change the analysis.   When the Ninth Circuit held that the San Bernardino County

15   Defendants did not violate Plaintiff's Fourteenth Amendment rights, it did so based

16   on the assumption that the difference in height was sufficient to put San Bernardino

17   on notice that it should conduct a further investigation, and also based on the

18   assumption that Plaintiff complained to San Bernardino officials.   *Gant*, *supra*, 772

19   F.3d at 622 ("we assume the significant discrepancies between the physical

20   descriptors on Ventura's driver's license and the physical descriptors on the warrant

21   did raise the concern that the wrong man was being detained, just as we assume that

22   Ventura voiced his objection to the San Bernardino defendants").   In other words,

23   the Ninth Circuit held that a triable issue of fact existed as to whether San

24   

—————————————————————————————

25   generate Plaintiff's fingerprint-verified criminal history, a history which would

26   have established Mr. Ventura could not be the warrant's intended subject"

27   (Opposition at fn. 2); and (4) "defendants knew they could have retrieved Plaintiff's

fingerprint-verified criminal history in seconds, a history defendants knew or should

28   have known would be dispositive on whether Mr. Ventura was the subject of [the]

warrant" (Opposition at 7:25-28).

Bernardino was under a Fourteenth Amendment duty to investigate Plaintiff's identity, but still held that San Bernardino did not violate Plaintiff's Fourteenth Amendment rights because a review of Plaintiff's criminal history would not have revealed that he was not the warrant subject, and therefore would not have resulted in his exoneration or release.

Plaintiff's reliance on **the very same evidence that was deemed by both this Court and the Ninth Circuit as insufficient to create a triable issue of fact** is fatal to Plaintiff's opposition, and warrants summary adjudication in favor of the Los Angeles County Defendants.  It stands to reason that, if San Bernardino County did not violate Plaintiff's Fourteenth Amendment rights by not reviewing his criminal history (notwithstanding Plaintiff's alleged complaints and notwithstanding the alleged height and weight difference), neither did the Los Angeles County Defendants.  This issue is dispositive, and by itself warrants granting summary adjudication in favor of the Los Angeles County Defendants.

II.    **PLAINTIFF HAS PRESENTED INSUFFICIENT EVIDENCE THAT ANY ALLEGED INFRINGEMENT OF HIS CONSTITUTIONAL RIGHTS WAS, OR COULD HAVE BEEN, CAUSED BY A POLICY PRACTICE, OR CUSTOM OF THE LOS ANGELES COUNTY DEFENDANTS.**

Plaintiff submits five categories of evidence in an effort to establish that any alleged infringement of Plaintiff's Fourteenth Amendment rights was caused by a policy, practice, or custom of the County of Los Angeles.  First, Plaintiff points to ten other former Los Angeles County jail detainees who claim their complaints of mistaken identity were ignored by Sheriff's Department personnel over a 15-year time period (from 1997 through 2013).  (Document No. 240, Declaration of Donald W. Cook at ¶ 8.)  This evidence is insufficient to overcome summary adjudication for two reasons.  First, Defendants have presented evidence that, from 1997 through 2010, the Los Angeles County jails detained a total of 2, 336,850 inmates.

6

(Document No. 177, Declaration of Stephen Park.)   The ten former detainees constitute only 0.0004% of the total jail population during that time period (which is actually shorter than the 15-year time span during which the ten detainees referenced in ¶ 8 of Mr. Cook's declaration were detained).   Defendants have also presented evidence that, from 1997-2010, there were 6,434 detainees who were released from the Los Angeles County jail as the wrong defendant.   The ten detainees referenced in ¶ 8 of Mr. Cook's declaration who were detained 1997-2013 constitute only 0.16% of the total wrong defendant releases during that time.   In other words, this evidence represents nothing more than a spattering of a few aberrational isolated incidents over a very long period of time – evidence the Supreme Court has held is insufficient to establish a *Monell* claim.   It is well-established that a *Monell* claim based on an alleged practice or custom must be predicated on a longstanding, institution-wide practice of deliberate indifference, and cannot be based on a single incident, or a statistically miniscule collection of isolated incidents.   *See, e.g., Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (**"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."**) (emphasis added).

Second, of the ten former detainees referenced in ¶ 8 of Mr. Cook's declaration, at least five of them (Ricardo Reyes, Phillip Reed, Kelvin Gant, Santiago Rivera, and Reginald Smith) should be disregarded because either this Court or the Ninth Circuit have held that the County and Sheriff's Department did not violate the Fourteenth Amendment rights of those individuals. *Gant, supra*, 772 F.3d at 620-621; *Rivera v. County of Los Angeles*, 745 F.3d 384, 390-393 (9th Cir. 2014); *Reed v. Baca*, 584 Fed. Appx. 880, 880-881 (9th Cir. 2014); *Gant v. County of Los Angeles*, 594 Fed. Appx. 335, 338 (9th Cir, 2014); *Reyes v. City of Glendale*, 2009 WL 2241602 at *19 (C.D. Cal. 2009).   Because these individuals did not

experience an infringement of their Fourteenth Amendment rights (despite the fact that they were held on warrants seeking the arrest of another person and ultimately exonerated on those warrants), their experiences do not evidence a practice or custom of deliberate indifference by the County.  Clearly, since the County and Sheriff's Department did not violate the Fourteenth Amendment rights of these individuals, the County and Sheriff's Department cannot be said to have acted with deliberate indifference to their Fourteenth Amendment rights.  Once these five individuals are excluded, the five remaining individuals referenced in ¶ 8 of Plaintiff's opposition constitute only 0.0002% of all detainees held in the Los Angeles County jail from 1997 through 2010, and only 0.08% of all detainees released as the wrong defendant from 1997 through 2010.  Again, such a spattering of isolated incidents over the course of 13 years is not sufficient to show a longstanding, institution-wide practice or custom of deliberate indifference.

The second category of evidence Plaintiff relies upon in an effort to establish a policy practice, or custom of deliberate indifference is set forth in ¶ 7(A) of Mr. Cook's declaration (Document No. 240), in which counsel asserts that the LASD will never conduct an investigation into a detainee's identity even when they know that the arrestee's name, date of birth, and CII number do not match those on the warrant.  This argument is meritless largely because it ignores the LASD's disputed warrant verification policy, which requires the LASD to investigate complaints by detainees that they are not the subject of an arrest warrant.  In other words, regardless of whether or not the LASD initially accepts the representation of the arresting agency that the arrestee is the subject of the warrant, the LASD *does* have a policy of investigating a detainee's identity in those circumstances when a detainee complains he/she is not the warrant subject, and LASD personnel are not permitted to turn a blind eye to issues of identity in the face of a detainee's

1   complaint.[5]

2       Of course, to the extent Plaintiff may contend that Defendants are

3   deliberately indifferent because they do not have a policy requiring LASD

4   personnel to investigate the identities of *all* detainees who come into their custody

5   (regardless of whether or not they complain about being the wrong person), such a

6   claim would be meritless.   The Fourteenth Amendment does not require law

7   enforcement agencies receiving custody of detainees from other agencies to conduct

8   *sua sponte* investigations into the detainees' identities, even when they do not bring

9   the issue of mistaken identity to the agency's attention.   This is precisely why the

10  Ninth Circuit affirmed the dismissal of Plaintiff Kelvin Gant's claims in this very

11  action – there was no evidence that he ever complained to the LASD about being

12  the wrong person.   *Gant, supra*, 772 F.3d at 620-621 ("Because Gant did not allege

13  that he told the L.A. County defendants he had a judicial clearance form or that he

14  otherwise called this case of mistaken identity to their attention . . . the district court

15  correctly dismissed Gant's Fourteenth Amendment claim against the L.A. County

16  defendants.")

17      The third category of evidence Plaintiff relies upon in an effort to establish a

18  policy practice, or custom of deliberate indifference is set forth in ¶ 7(B) of Mr.

19  Cook's declaration, in which Mr. Cook contends that, from 2006-2010, the LASD

20  released 1,408 detainees as the wrong defendant (meaning they were arrested on a

21  warrant and later exonerated as not being the subject of the warrant), but conducted

22  only 3 disputed warrant investigations.   Plaintiff's conclusions regarding this

23

24  _____

25  [5] Indeed, Defendants have submitted evidence demonstrating that a difference in

26  CII numbers could simply mean that the detainee has two CII numbers, and may

27  not mean that the detainee is the wrong person. (Document No. 121, Angela

    Becerra Declaration, ¶ 25; Document No. 120-2, #54.) In any event, such a policy

28  would have no bearing on the instant case because there is no evidence that any

    LASD personnel knew that Ventura had a CII number that was different from the

evidence (that the LASD rarely responds to detainees' complaints of mistaken identity), however, are flawed, because Plaintiff makes numerous material assumptions about these statistics for which there is absolutely no evidence. These material assumptions are set forth in detail in Defendants' objections to Plaintiff's evidence (Document No. 245), and Defendants will briefly summarize them below for the Court's convenience:

- The statistics Plaintiff cites concerning disputed warrant investigations come exclusively from two LASD facilities: the Inmate Reception Center ("IRC") or the Century Regional Detention Facility ("CRDF"). Other investigations which may have taken place at other facilities (such as LASD stations) would not be reflected in Plaintiff's evidence. In other words, some of the 1,408 detainees referenced in ¶ 7(B) of Mr. Cook's declaration may have been released as the result of an investigation, but their investigations are not included in Plaintiff's statistics because the investigation took place at a facility other than IRC or CRDF. Plaintiff's assumption that all 1,408 detainees reflected in ¶ 7(B) of Mr. Cook's declaration were detained at IRC or CRDF is speculative and without foundation.

- Plaintiff also assumes that all 1,408 detainees released as the wrong defendant from 2006-2010 actually complained to LASD personnel about being the wrong person. To the extent they did not complain, and to the extent the LASD has a policy, practice, or custom of not conducting *sua sponte* identity investigations of detainees who do not bring the issue to their detention, such a policy, practice, or custom would evidence a practice of deliberate indifference because the Fourteenth Amendment does not require that a law enforcement

warrant subject's CII number (the warrant did not contain the warrant subject's CII number).

10

agency conduct a *sua sponte* investigation.  *Gant*, *supra*, 772 F.3d at 620-621 (Defendants did not violate Plaintiff Gant's Fourteenth Amendment rights, even assuming they did not investigate his identity, because Gant did not bring the issue of mistaken identity to their attention).  Defendants presented affirmative evidence that detainees do not always bring the issue of mistaken identity to their attention, and Plaintiff has not refuted this evidence. (*See*, Declaration of Angela Becerra, Document No. 121, ¶¶ 10-13; Separate Statement, Document No. 120-2, Fact #40-41.)

- In addition, Plaintiff assumes that none of the 1,408 detainees released as the wrong defendant from 2006-2010 were lawfully detained by the LASD.  The fact that a detainee is in custody on a warrant seeking the arrest of another person does not necessarily mean that the detainee is unlawfully detained.  This is so for two reasons.  First, a detainee may be (and often is) in custody on multiple charges, in multiple different criminal cases, at the same time.  While one charge may relate to a warrant which does not belong to the detainee, one or more other charges will be in cases for which the detainee is the correct defendant, and for which the detainee should be in custody. (*See*, Declarations of Angela Becerra, Document No. 245, Exhibit C at ¶¶ 5-12, Exhibit E at ¶¶ 5-12.)[6]  In such a case, the detention is lawful as long as at least one charge provides probable cause.  *See*, *Barry v. Fowler*, 902 F.2d 770, 773 fn.5 (9th Cir. 1990) (where a party is arrested, there is only on seizure, and the seizure is lawful even if the seizure is based on two

---

[6] These declarations were submitted in connection with, and in support of, Defendants' objections to Plaintiff's evidence.  It is proper to submit declarations in a reply if the purpose is to support objections to evidence. (Caron Decl., ¶ 5; Exhibit D.)

11

offenses and there is no probable cause to arrest on one of the two offenses, if there is probable cause to arrest on one). Second, a detainee may be brought to court directly by the arresting agency (without having first been brought into LASD custody), and then remanded into LASD custody by the Superior Court. (*See*, Declarations of Angela Becerra, Document No. 245, Exhibit C at ¶ 13, Exhibit E at ¶ 13.) In such a case, the Fourteenth Amendment imposes no obligation to investigate the detainee's identity. *Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006); *Gant v. County of Los Angeles*, 594 Fed. Appx. 335, 338 (9th Cir. 2014). To the extent the LASD has a policy, practice, or custom of not investigating complaints of mistaken identity by detainees who are otherwise lawfully in custody, such a practice does not reflect deliberate indifference to detainees' Fourteenth Amendment rights. Plaintiff, however, does not specify how many (if any) of the 1,408 detainees referenced in ¶ 7(B) of counsel's declaration were in LASD custody without having first been remanded into LASD custody, and without any other lawful reason to detain them. To the extent Plaintiff assumes all 1,408 detainees were unlawfully detained, any such assumption is speculative and without foundation.

Absent foundational evidence setting forth (1) how many of the 1,408 detainees actually complained to LASD personnel about being the wrong person; (2) how many of the 1,408 detainees were detained at IRC or CRDF; and (3) how many of the 1,408 detainees were lawfully in custody for another reason other than the warrant on which they were ultimately exonerated, Plaintiff's evidence says nothing about whether or not LASD personnel are deliberately indifferent to the Fourteenth Amendment rights of detainees. For these reasons, this Court has, on at least two occasions, held that similar evidence (i.e., a comparison of wrong

defendant releases to the number of investigations conducted by the LASD) is "too speculative to create a triable issue of fact" on the issue of whether the LASD has a custom or practice of deliberate indifference.  *Reed v. Baca*, 800 F.Supp.2d 1102, 1111-1112 (C.D. Cal. 2011); *Reyes v. City of Glendale*, 2009 WL 2241602 at *19 (C.D. Cal. 2009).  There is no reason for a different result here, where the evidence presented is nearly identical[7], and where the evidence is speculative and lacking foundation for the same reasons as in *Reed* and *Reyes*.

The fourth category of evidence Plaintiff relies upon in an effort to establish a policy practice, or custom of deliberate indifference is set forth in ¶ 9 of Mr. Cook's declaration, in which Mr. Cook contends that the LASD does not update warrants with exonerating information after a detainee is released as the wrong defendant.  Plaintiff, however, is not free to point to any alleged custom or practice in his effort to establish *Monell* liability; rather, Plaintiff must point to a custom and/or practice that caused a violation of Plaintiff's Fourteenth Amendment rights. Plaintiff Ventura does not claim that his detention was caused by the fact that the LASD did not update the warrant with an exoneration following a prior mistaken arrest on the warrant (indeed, Plaintiff does not claim that, prior to December 2007, either he or anyone else was mistakenly arrested on the warrant).  Rather, Plaintiff claims Defendants violated his Fourteenth Amendment rights because Defendants allegedly did not review his criminal history in response to his alleged complaints of mistaken identity.  The argument set forth in ¶ 9 of counsel's declaration is

_____

[7] For example, in *Reed*, the plaintiff (who was represented by the same counsel who represents Plaintiff in this case) likewise submitted evidence comparing the number of wrong defendant releases to the number of investigations conducted at IRC and CRDF.  (*See*, CV 10-05766 JHN (JCx), Document No. 31, Declaration of Donald W. Cook at ¶¶ 11-16.)  Defendants' objections to this evidence were similar to the objections Defendants have raised in this case to the statistical evidence in this case.  *See*, CV 10-05766 JHN (JCx), Document No. 38.)  The Court agreed with Defendants that the evidence was too speculative to create a triable issue of fact.

13

1  therefore irrelevant, as it does not address any custom or practice that would, or

2  could, have caused a violation of Plaintiff's Fourteenth Amendment rights.[8]

3       The fifth category of evidence Plaintiff relies upon in an effort to establish a

4  policy practice, or custom of deliberate indifference is set forth in ¶ 10 of Mr.

5  Cook's declaration, in which counsel argues that Sheriff Baca appointed a task

6  force to address the issue of mistaken detentions and contends that the task force

7  did not update any policies or implement any new policies.   This evidence,

8  however, suffers from the same problems as the "evidence" referenced in ¶ 7(B) of

9  counsel's declaration – namely, that Plaintiff has not established that LASD

10 personnel are deliberately indifferent to the Fourteenth Amendment rights of

11 detainees in the first place. *Henry v. County of Shasta*, cited by Plaintiff in support

12 of this argument, is distinguishable in that, in *Henry*, there was evidence that a

13 substantial number of officers had engaged in "a blatantly unconstitutional course

14 of treatment" over a relatively short period of time.   *Henry v. County of Shasta*, 132

15 F.3d 512, 518-521 (9th Cir. 1997).   Here, as discussed above, the evidence Plaintiff

16 has submitted says nothing at all about whether LASD personnel are deliberately

17 indifferent to detainees' Fourteenth Amendment rights, and Plaintiff's

18 characterization of the evidence is riddled with assumptions.   To the extent the task

19 force reached the conclusion that an updated disputed warrant verification policy

20 was not necessary, such a conclusion is not evidence of deliberate indifference in

21 and of itself; it is simply indicative of a conclusion that the disputed warrant

22 verification procedure is working.   Such a conclusion does not evidence deliberate

23 indifference.

24 //

25

26 _____

27 [8] In addition, it is notable that Plaintiff has not presented any evidence concerning

28 how frequently exonerations are entered on arrest warrants following a mistaken detention.

III.    **CONCLUSION.**

Based on the foregoing, the Los Angeles County Defendants therefore respectfully request that this Court grant summary judgment in their favor as to Plaintiff Ventura's sole remaining cause of action against them.

DATED:  April 28, 2015                    LAWRENCE BEACH ALLEN & CHOI, PC


                                          _s/  Scott E. Caron_____
                                          Scott E. Caron
                                          Attorneys for Defendants
                                          COUNTY OF LOS ANGELES and
                                          LOS ANGELES COUNTY SHERIFF'S
                                          DEPARTMENT

15

**DECLARATION OF SCOTT E. CARON**

## DECLARATION OF SCOTT E. CARON

I, Scott E. Caron, declare as follows:

1.      The following is based upon my personal knowledge and if called upon as a witness, I could and would competently testify thereto.  I am an attorney at law duly licensed to practice before this Court and all the courts of the State of California.  I am an associate in the law firm of Lawrence Beach Allen & Choi, PC, attorneys for Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT.

2.      Attached hereto as Exhibit A is a true and correct copy of the Second Supplemental Declaration of Donald W. Cook in Opposition to Defendants' Motions for Summary Judgment re Jose Alexander Ventura, submitted by Plaintiff Ventura in opposition to the motion for summary judgment filed by the County of San Bernardino Defendants in this litigation.

3.      Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Submission of Excerpts of November 19, 2010 Deposition of Johanna Williams, submitted by Plaintiff Ventura in opposition to the motion for summary judgment filed by the County of San Bernardino Defendants in this litigation.

4.      Attached hereto as Exhibit C is a true and correct copy of the Reply in Support of County of San Bernardino's Motion for Summary Judgment, submitted by the County of San Bernardino in this litigation.

//
//
//
//
//
//
//
//

16

1    5.    Attached hereto as Exhibit D is a true and correct copy of this Court's

2  order in *Reed v. Baca*, CV 10-05766 JHN (JCx), holding that declarations submitted

3  in connection with a reply are proper if submitted in support of objections to

4  evidence.

5    I declare under penalty of perjury under the laws of the State of California

6  and of the United States that the foregoing is true and correct.

7    Executed on April 28, 2015 at Glendale, California.

8

9

10                                    s/   Scott E. Caron
                                         Scott E. Caron

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

1  **ROBERT MANN**, CSB 48293
   **DONALD W. COOK**, CSB 116666
2  ATTORNEYS AT LAW
   3435 Wilshire Blvd., Suite 2900
3  Los Angeles, CA  90010
   (213) 252-9444; (213) 252-0091 facsimile
4  manncook@earthlink.net

5  Attorneys for Plaintiff

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  KELVIN GANT, REGINALD LENARD          Case No. CV08-5756 GAF (PJWx)
    SMITH, JOSE ALEXANDER
12  VENTURA, individually and as class     **SECOND   SUPPLEMENTAL
    representatives                        DECLARATION OF DONALD
13                                         W. COOK IN OPPOSITION TO
                     Plaintiff,            DEFENDANTS'   MOTIONS
14                                         FOR SUMMARY JUDGMENT
    vs.                                    RE  JOSE   ALEXANDER
15                                         VENTURA (DOCUMENTS 120,
    COUNTY OF LOS ANGELES, ETC.,           133, 140 & 143)**
16  ET AL.,
                                           Date: 12/6/10
17                   Defendants.           Time: 9:30 a.m.
                                           Ctrm: 740 (Roybal)
18

19

20

21

22

23

24

25

26

27

28

                                                            00064449.WPD

# DECLARATION OF DONALD W. COOK

I, DONALD W. COOK, declare:

1. I am one of the attorneys representing Plaintiffs Kelvin Gant and Jose Alexander Ventura. I submit this declaration in addition to that evidence already on file.

*Deposition of San Bernardino County's Rule 30(b)(6) James Nursall*

2. As stated in my declaration filed last week (document 166) on November 17, 2010, I deposed San Bernardino County Rule 30(b)(6) agent James Nursall. On late Friday, November 19, I received an expedited copy of the transcript. Germane to defendants' motions Mr. Nursall testified:

A. Notwithstanding the claim by the San Bernardino defendants that the California Department of Justice did not provide livescan results for Plaintiff Mr. Ventura until some five weeks after December 13, 2007, using CLETS it would have taken no more than a few minutes, if that, for San Bernardino jail officials to (a) identify Plaintiff Mr. Ventura by his fingerprints, (b) retrieve his CII number and (c) retrieve his fingerprint-matched criminal history. The process is you run Mr. Ventura's name and birth date in CLETS, pull up the criminal history for those individuals who appear to be a possible match, then using the criminal history retrieve the fingerprints on file with the Department of Justice with the fingerprints taken from Mr. Ventura when he was booked at the San Bernardino jail.  Nursall depo., 9:8-10:5, 12:21-13:6, 13:11-14:1, 17:7-18:4, 37:10-12. See **Exhibit A**, true copies of cited pages from the Nursall transcript. (While this process takes only a few minutes, an even faster process is to match via the social security and driver's license numbers that appear on the criminal history.)

B. Mr. Nursall testified that the criminal history will reflect the arrestee's "every fingerprint verified booking." Nursall depo., 13:11-14:1 (**Exhibit A**). Since

-1-

00064449.WPD

1   Plaintiff Mr. Ventura had never been arrested or booked for any crime (see

2   paragraph 3 *infra*), had San Bernardino officials retrieved his criminal history they

3   would have known he could not be the warrant's subject. See also Nursall depo.,

4   34:4-35:9, 35:20-36:20, 36:11-37:17 (The Gant warrant abstract that I used with

5   Mr. Nursall had the CII number redacted.).

6       C. Regarding the Plaintiff Mr. Gant, I showed Mr. Nursall's copies of the

7   CLETS printouts the Torrance defendants generated (see 9/29/10 Order [document

8   110]) for Plaintiff Mr. Gant and his brother Kevin, the subject of the felony

9   warrant. Mr. Nursall easily concluded that (a) the CLETS printouts referred to two

10  different people, and (b) Plaintiff Mr. Gant was *not* the subject of the warrant on

11  which Torrance PD arrested him, because the CII numbers did not match, the

12  fingerprints did not match, and the criminal case out of which the warrant issued

13  was *not* reflected on Plaintiff Mr. Gant's criminal history. Nursall depo., 14:8-

14  15:15, 15:14-20, 17:21-19:3, 29:18-30:2, 30:23-31:13 (**Exhibit A**).

15  *Deposition of California Department of Justice Custodian*

16

17  3. This past Friday, November 19, I deposed Johanna Williams, the Keeper of

18  Records for the California Department of Justice. She testified that via CLETS, Plaintiff

19  Mr. Ventura's criminal history was available to any law enforcement agency with CLETS

20  access within seconds. She produced a copy of Mr. Ventura's CLETS-generated criminal

21  history, a copy of which is attached hereto as **Exhibit B** (redacted to eliminate month and

22  day of birth, social security and driver's license numbers). She testified that as of

23  December 13, 2007, his CLETS history reflected no arrests or prosecutions, that the only

24  ones reflected were those that arose out of his December 13, 2007 arrest on the warrant

25  meant for someone else. Ms. Williams further testified that per a Department of Justice

26  Security log, no law enforcement agency accessed Mr. Ventura's criminal history in

27

28

-2-

00064449.WPD

**Exhibit "A"** -  20

1   December 2007.

2        I declare under penalty of perjury that the foregoing is true and correct.  Executed

3   November 22, 2010, at Los Angeles, California.

4

5

6                              _____
                                    Donald W. Cook

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

00064449.WPD

**Exhibit "A" -** 21

Case 2:08-cv-05756-SVW-PJW   Document 246   Filed 04/28/15   Page 28 of 83   Page ID
#:5468
Case 2:08-cv-05756-GAF-PJW   Document 169   Filed 11/22/10   Page 5 of 28   Page ID
#:3432

```
 1                   UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    KELVIN GANT, REGINALD LENARD    )
      SMITH, JOSE ALEXANDER VENTURA,  )
 6    individually and as class       )
      representatives,                 )
 7                                      )
                        Plaintiffs,    )
 8                                      )
           vs.                          )   Case No. CV08-5756 GAF
 9                                      )         (PJWx)
      COUNTY OF LOS ANGELES, ETC., ET  )
10    AL.,                              )
                                        )
11                      Defendants.     )
                                        )
12

13

14

15

16                   DEPOSITION OF JIM NURSALL

17                   LOS ANGELES, CALIFORNIA

18               WEDNESDAY, NOVEMBER 17, 2010

19

20

21

22

23    REPORTED BY:
      DANA D. FORBES,
24    CSR NO. 8095

25
```

1

**11/17/10 Nursall depo.**                **-5-**                **EXHIBIT A**

**Exhibit "A" -** 22

```
 1                    Deposition of JIM NURSALL, taken at 3435

 2    Wilshire Boulevard, Suite 2900, Los Angeles, California,

 3    commencing at 12:18 p.m. on Wednesday, November 17,

 4    2010, before DANA D. FORBES, CSR No. 8095, pursuant to

 5    Notice.

 6

 7                         APPEARANCES:

 8    For the Plaintiffs:

 9              DONALD W. COOK, ESQ.
                3435 Wilshire Boulevard
10              Suite 2900
                Los Angeles, California 90010
11              (213) 252-9444

12

13    For the Defendant County of Los Angeles:

14              LAWRENCE, BEACH, ALLEN & CHOI, PC
                BY:  MICHAEL D. ALLEN, ESQ.
15              100 West Broadway
                Suite 1200
16              Glendale, California 91210
                (818) 545-1925

17

18    For the Defendants County of San Bernardino and San
      Bernardino Sheriffs Department:
19

20              COUNTY COUNSEL
                BY:  JAMES H. THEBEAU, ESQ.
21              385 North Arrowhead Avenue
                4th Floor
22              San Bernardino, California 92415-0140
                (909) 387-4402

23

24

25
```

2

**11/17/10 Nursall depo.**                    **-6-**                    **EXHIBIT A**

**Exhibit "A" -** 23

```
 1                    APPEARANCES (continued):

 2

 3    For the Defendant County of Chino:

 4

 5                   FERGUSON, PRAET & SHERMAN
                     BY:  BLAKNEY A. BOGGS, ESQ.
 6                   1631 East 18th Street
                     Santa Ana, California 92705
 7                   (714) 953-5300

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                        I N D E X

 2

 3   THE WITNESS          EXAMINATION              PAGE

 4   JIM NURSALL          BY MR. COOK                5

 5

 6

 7                        EXHIBITS

 8                          NONE

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                     4
```

```
 1          LOS ANGELES, CALIFORNIA, WEDNESDAY, NOVEMBER 17, 2010
 2                            AT 12:18 P.M.
 3                            ---oOo---
 4
 5                            JIM NURSALL,
 6          having been administered an oath by the certified
 7          shorthand reporter in compliance with Code of Civil
 8              Procedure section 2094(a), was examined
 9                    and testified as follows:
10
11                            EXAMINATION
12     BY MR. COOK:
13          Q    State your name, please.
14          A    Jim Nursall.
15          Q    How long have you been employed by the sheriffs
16     department, San Bernardino Sheriffs Department?
17          A    It will be 18 years next month.
18          Q    Your current rank?
19          A    Supervising fingerprint examiner.
20          Q    Is that a civilian or sworn position?
21          A    Civilian.
22          Q    How long have you been a fingerprint examiner
23     for the department?
24          A    Since June of '96.
25          Q    What was your position before?
```

                                                                    5

**11/17/10 Nursall depo.**                                 **EXHIBIT A**
                              **-9-**

                                              **Exhibit "A" -** 26

1          A    I was a sheriffs motor pools assistant,

2    basically mechanic.

3          Q    Do you know what an FPC Henry code is?

4          A    I believe that's fingerprint classification and

5    Henry is -- it's a form of classifying fingerprints that

6    was used prior to automation.

7          Q    Yeah.  I mean basically, not that we need to

8    get into all the details, fingerprints are grouped into

9    various types of prints and then you narrow it down from

10   there from one classification to another.  Is that the

11   way it works?

12         A    Yes.  Yeah.

13         Q    Did you review anything in preparation for the

14   deposition?

15         A    Yeah.

16         Q    What did you review?

17         A    I believe some of the material in the booking

18   jacket.  A lot of it was foreign to me because I'm a

19   fingerprint examiner.  But I know in preparation for

20   this we met several times and reviewed some of the stuff

21   that was in the booking jacket and it was brought to my

22   attention.

23         Q    The 10 print card, for example, or

24   documentation, you reviewed that; right?

25         A    His 10 print card.  Yes.

                                                        6

**11/17/10 Nursall depo.**                **EXHIBIT A**

                    **-10-**

                                   **Exhibit "A" - 27**

Case 2:08-cv-05756-GAF-PJW   Document 169   Filed 11/22/10   Page 11 of 28   Page ID #:3438

```
 1    for speculation.
 2         Q   BY MR. COOK:  Is that correct?
 3         A   I'm assuming so.  When I reviewed the booking
 4    jacket, we noticed that was in there.
 5         Q   Do you know how the CII number ended up on the
 6    Inmate Classification form?
 7         A   No.  I don't.
 8         Q   Back to CII numbers, anyone who's been booked
 9    and fingerprinted at a California jail will be assigned
10    a CII number, if they don't already have one, by the
11    California Department of Justice; is that true?
12         A   That's correct.
13         Q   And professions that are required to be
14    licensed by California, members of that profession will
15    also have CII numbers too; is that true?
16         A   Applicants for certain types of jobs need to be
17    fingerprinted, and they are issued a CII number as well.
18         Q   For example, you have a CII number, I have a
19    CII number.  Everybody here probably has a CII number.
20         A   Most likely.  Yeah.
21         Q   Right.  The CII number is supposed to remain to
22    the person it's assigned to and never be reissued to
23    anyone else; is that true?
24         A   That's true.
25         Q   One of the functions of a CII number is to
```

9

**11/17/10 Nursall depo.**               **-11-**               **EXHIBIT A**

**Exhibit "A" - 28**

```
1    assist law enforcement in identifying persons to the
2    exclusions of others who may have the same or similar
3    name, birth date, and other non unique physical
4    characteristics; is that correct?
5         A    Yes.  It is.
6         Q    FBI numbers are like a CII number except that,
7    A, they're assigned by the FBI and, B, it's based upon
8    records that the FBI received from various United States
9    jurisdictions; is that correct?
10        A    Yes.
11        Q    San Bernardino County, does it have its own
12   unique numerical identifier?
13        A    Regarding fingerprints?
14        Q    Fingerprints.
15        A    That would be what we call the Cal I.D.
16   number.
17        Q    Aren't CII numbers sometimes referred to as Cal
18   I.D. numbers?
19        A    Not in my office.  No.
20        Q    Really?  I've seen it in Department of Justice
21   paperwork.  Anyway, okay.  So do you know what an L.A.
22   main number is?
23        A    That's L.A.'s terminology for what we call a
24   Cal I.D. number.  Our Cal I.D. number is unique to that
25   individual within our county.
```

                                                            10

**11/17/10 Nursall depo.**                 **-12-**                 **EXHIBIT A**

1      A    Different vendor but the idea is the same.

2      Q    Do you ever have occasion to run names through

3   CLETS to access criminal records?

4      A    Yeah.  Almost daily.

5      Q    Basically the process is pretty much like what

6   Ms. Walstrom testified to, which is you put in a name, a

7   birth date, you get a hit on listing of individuals with

8   similar sounding names or the same names and birth

9   dates; is that right?

10     A    Yes.  That's correct.

11     Q    And does CLETS or Department of Justice give

12  you a maximum number of hits on such a query?

13     A    No.

14     Q    So sometimes a few names, sometimes a lot of

15  names depending upon the search criteria; correct?

16     A    I believe actually, depending upon the search

17  criteria, I've seen responses where it says "too many

18  names" because -- and you need to obviously add more

19  criteria to narrow down the search.  So I don't know if

20  there's a limit, but I've seen that response.

21     Q    So, for example, you could take my client's

22  first and last name, Jose Ventura, along with his date

23  of birth, run it through CLETS, and you'll get a return

24  listing the number of individuals and DOJ records with

25  that name and birth date; right?

                                                    12

**11/17/10 Nursall depo.**          **-13-**          **EXHIBIT A**

**Exhibit "A" -** 30

```
 1          A    Yes.  Or very similar to.
 2          Q    Or very similar.  And then, if you want, you
 3    could basically, by going to some additional screens or
 4    hitting a few keys, call up the criminal history for
 5    each individual listed; true?
 6          A    Yes.
 7          Q    Warrant numbers include court case numbers; is
 8    that right?
 9          A    I believe in our county warrant numbers are
10    actually the court case number.
11          Q    All right.  Even better.  And it's also true,
12    isn't it, that the way it works with the Department of
13    Justice and their criminal history record keeping is
14    that the criminal history, you know, stored under the
15    CII number will reflect every fingerprint verified
16    booking and prosecution under that CII number; correct?
17          A    It will reflect the arrest information.  As far
18    as the prosecution, that has to come from the court.
19          Q    Assuming the court forwards it, it will be
20    reflected; correct?
21          A    Yes.
22          Q    So, for example, someone arrested, booked,
23    prosecuted on a felony, fingerprinted, you would expect
24    to find under that person's criminal history the fact of
25    that arrest on that charge; correct?
```

13

**11/17/10 Nursall depo.**                    **EXHIBIT A**

-14-

Exhibit "A" - 31

```
 1        A    Yes.
 2        MR. THEBEAU:  You have to let me -- you are really
 3   fast with your answers.  The question lacked foundation;
 4   called for speculation.
 5        MR. ALLEN:  Incomplete hypothetical also.
 6        MR. THEBEAU:  Join.
 7        MS. BOGGS:  Join.
 8        Q    BY MR. COOK:  I'm handing you a copy of a
 9   protective order issued in this case.  Attached to it
10   are some CLETS printouts.  If you could turn to the very
11   last page, you've seen CLETS printout formatted like you
12   see on the last page here; is that true?
13        A    Yes.
14        Q    You can tell by looking at this printout that
15   the search criteria was on the last name Gant, first
16   name Kevin; right?
17        A    Yes.
18        Q    And the query returned a list of seven
19   different individuals with the same or similar sounding
20   names; true?
21        A    Yes.
22        Q    The first two individuals are returned as
23   having the exact same name and same date of birth and
24   very, very close in the physical descriptors; right?
25        A    Yes.
```

                                                          14

**11/17/10 Nursall depo.**          **-15-**          **EXHIBIT A**

```
 1          Q   But you can tell, however, that according to
 2     the records, these are two different people; right?
 3          MR. THEBEAU:  Objection; lacks foundation; calls
 4     for speculation.
 5          Go ahead.
 6          MR. ALLEN:  Join.
 7          MS. BOGGS:  Join.
 8          THE WITNESS:  I can tell it's two different CII
 9     numbers.
10          Q   BY MR. COOK:  Two different CII numbers
11     indicate two different people; true?
12          A   Normally.  Yes.
13          Q   Assuming the system is working the way it
14     should be, it should be two different people; true?
15          A   Yes.
16          MR. ALLEN:  Assumes facts not in evidence.
17          Q   BY MR. COOK:  But sometimes mistakes happen;
18     right?
19          A   Yes.
20          Q   It's been known to happen, hasn't it, that one
21     person will end up, where some error is made somewhere,
22     and someone can have two different CII numbers?
23          A   Yeah.  We actually report those to the state
24     when we come across them.
25          Q   In fact, the state, as far as you know, advises
```

                                                            15

**11/17/10 Nursall depo.**          -16-          **EXHIBIT A**

**Exhibit "A" - 33**

```
 1    profession is I would actually request those
 2    fingerprints from the state and compare them to see if
 3    it's the same individual.  I don't know by looking at
 4    the criminal history.  I look at the fingerprints.
 5         Q    BY MR. COOK:  But you're a fingerprint guy.
 6         A    That's what I do.
 7         Q    But it takes time to get fingerprints, doesn't
 8    it?
 9         A    Not nowadays.  No.
10         Q    How long does it take?
11         A    If they're in the archive, we have access to
12    them 24/7.
13         Q    24/7.  And how long from when you make the
14    request to how long when you get the prints?
15         A    I can actually pull them up at my desk and
16    print them in my office.
17         Q    Okay.  And that was the case in December 2007?
18         A    In our fingerprinting unit, yeah.
19         Q    So it's literally seconds; is that right?
20         A    That's correct.  Yes.
21         Q    So if, for example, you got this printout from
22    CLETS that I'm having you look at and you wanted to
23    determine if we are really talking about two different
24    people or some error in the system, you would have
25    actually just retrieved the fingerprints?
```

                                                              17

**11/17/10 Nursall depo.**          **-17-**          **EXHIBIT A**

1        A    Yes.

2        Q    And actually getting the fingerprints would

3    have been a matter of seconds; true?

4        A    Yes.  That's correct.

5        Q    To actually do the comparison, is it still done

6    the way that they show it on the TV where you take the

7    magnifying glass and put it over the prints and go back

8    and forth?

9        A    For latent fingerprints, yes.  That's how we

10   still do it.

11       Q    What about the prints you get from the DOJ?

12   They come to you in what form, on like a card or

13   something?

14       A    Actually, we have access to their archives; so

15   we can print out what looks like the same 10 print card

16   you have in exhibit whatever that was.  We print those

17   fingers and palm prints.  We have access to do that for

18   comparison.  And I supervise the latent print unit where

19   we do crime scene prints.  But, yeah.  We have access to

20   those 24/7.

21       Q    But I mean with latent prints it's a little

22   more difficult to actually do the comparison; right?

23       A    Much more time consuming.

24       Q    But to do the comparison of prints with what

25   you get from the DOJ, that's a lot quicker, isn't it?

                                                          18

**11/17/10 Nursall depo.**              **EXHIBIT A**

                        **-18-**

                                          **Exhibit "A" -** 35

```
1       A    Much quicker.

2       Q    How long?

3       A    Maybe a minute or two.

4       Q    So in December of 2007 if someone had run the

5  name Jose Ventura and date of birth through CLETS, got a

6  report like this and got, let's say, the first two

7  names, Jose Ventura, two different CII numbers but the

8  same birth date, someone could have asked for

9  fingerprints just like you described; is that true?

10      A    Yes.

11      Q    And then someone could have made the comparison

12 in fingerprints just like you described; right?

13      A    Our fingerprint unit.  Yes.

14      Q    And within a matter of, it sounds like,

15 minutes, you would know if we're talking about two

16 different people or the same person with two different

17 CII numbers; right?

18      A    That's correct.

19      Q    Do you ever have occasion to be reviewing

20 criminal history?

21      A    Yes.

22      Q    On what occasions do you have to review

23 criminal history?

24      A    When we identify fingerprints in my office -- I

25 am a working supervisor -- we'll look at the criminal
```

                                                              19

**11/17/10 Nursall depo.**          **-19-**          **EXHIBIT A**

**Exhibit "A" - 36**

```
1    of birth 1958, residence address Montclair, that sort of
2    thing?
3        A   Exactly.
4        MR. THEBEAU:  You are asking him to testify from
5    the paperwork, and then you're asking a question which
6    doesn't include the paperwork; so it's extremely
7    ambiguous.
8        MR. COOK:  I'll make that clear.
9        Q   Your previous answer is obviously based upon
10   your knowledge of what you see in the paperwork you
11   reviewed as well as your knowledge of department
12   procedure; is that correct?
13       A   Yes.
14       Q   And the reason it's only based on those factors
15   is you do not have any personal knowledge of this
16   incident; true?
17       A   That's true.
18       Q   This protective order with the attached
19   documents to it, if you would turn to -- I think it's
20   the -- it's the fourth page.  It's the first criminal
21   history report.  That looks to be a DOJ criminal history
22   for a person with CII No. A06776321; is that correct?
23       A   Repeat the number again, please.
24       Q   It ends with 321.
25       A   Yes.
```

29

**11/17/10 Nursall depo.**             **-20-**             **EXHIBIT A**

**Exhibit "A"** - 37

1     Q   You see the FPC Henry code on this printout?

2     A   Yes.

3     Q   Assuming the information on this report is

4  accurate -- and I realize you have no personal knowledge

5  about this report.  But assuming it was, in fact,

6  generated on September 30, 2010, do you have any

7  knowledge as to why it would reflect an FPC Henry code

8  even those it's a classification code that has been

9  superceded with the DOJ?

10    A   The implementation of the AFIS, Automated

11  Fingerprint Identification System, in California was

12  around late 1985, 1986, and so he has -- at least the

13  first entry, he has an arrest from 1980; so that would

14  have preceded the AFIS technology.  So he would have

15  been given a Henry classification for purposes of

16  identifying that record.

17    Q   And because he got the Henry classification

18  before AFIS came into existence, that Henry

19  classification shows up on any criminal history that's

20  generated at whatever time since; is that true?

21    A   Yes.  That's part of his original criminal

22  history, I would assume.

23    Q   Okay.  Now, if I can get you to go in about

24  another six, seven pages, you'll see another criminal

25  history report.  Keep turning.  There, sir.  Okay.  Now,

30

**11/17/10 Nursall depo.**      **-21-**      **EXHIBIT A**

**Exhibit "A" - 38**

Case 2:08-cv-05756-GAF-PJW   Document 169   Filed 11/22/10   Page 22 of 28   Page ID
#:3449

1    you see what looks to be a criminal history report for

2    another individual whose CII number ends in 567;

3    correct?

4        A   That's correct.

5        Q   He too has got this Henry code, but it's

6    different from the Henry code for the first subject;

7    right?

8        A   Yeah.  It is.

9        Q   Again, that's just another statement basically

10   saying that the fingerprints don't match between these

11   two subjects; correct?

12       A   In this case, yeah.  The fingerprints would

13   appear to be from two different people.

14       Q   How often does it happen that jail personnel

15   will request Cal I.D., your unit, to identify if

16   someone's being booked in the jail?

17       A   I'm not sure of the numbers nowadays.  I don't

18   work in the 10 print unit anymore.  That's where I

19   started.  With the current system we have, the number of

20   requests we get from them is much lower because the

21   system is so much faster.  We normally get the responses

22   back both locally and from DOJ and FBI normally within

23   about an hour.

24       I know they still get -- I'm going to speculate --

25   maybe 10 or 20, say, within a 24-hour cycle asking us to

                                                        31

**11/17/10 Nursall depo.**          **-22-**          **EXHIBIT A**

                                         **Exhibit "A" - 39**

1    jacket.  It has the warrant abstract in it.  It's right

2    before the Inmate Classification Form.

3          A    Which is how deep?

4          Q    There you go.  With the information provided on

5    this warrant abstract about the subject, can you, using

6    processes available to you, obtain the CII number for

7    the subject?

8          A    Simply by name and date of birth?

9          Q    I'm not saying simply by name and date of

10   birth.  I'm just saying using the processes available,

11   can you obtain the CII number for this subject?

12         A    There's no CII number on this document.

13         Q    I understand.  Using the processes that are

14   available including CLETS, can you obtain the CII number

15   for this subject?

16         A    Of this --

17         MR. ALLEN:  Relevancy.

18         THE WITNESS:  Of this warrant?

19         Q    BY MR. COOK:  Of this warrant subject.

20         A    I don't see how.

21         Q    Well, let me take you through it.  You've got a

22   name and a date of birth; true?

23         A    Yes.

24         Q    You can run the name and date of birth in

25   CLETS; right?

                                                            34

**11/17/10 Nursall depo.**          **-23-**          **EXHIBIT A**

**Exhibit "A" -** 40

1       A    Yes.

2       Q    And then you'll get that listing of individuals

3   with matching names, close matches, et cetera, which we

4   described earlier; right?

5       A    Yes.

6       Q    And then you can call up the criminal history

7   for each individual, can't you, listed on that CLETS

8   return; right?

9       A    Yes.

10      Q    And you can look at the criminal history and

11  see if there's been an arrest given the prosecution that

12  matches up with the prosecution in this warrant, can't

13  you?

14      MR. THEBEAU:   Objection; lacks foundation; assumes

15  facts; calls for speculation; incomplete hypothetical.

16      MR. ALLEN:   Join.

17      MS. BOGGS:   Join.

18      THE WITNESS:   The criminal history in itself is not

19  going to confirm the warrant.

20      Q    BY MR. COOK:   Let's go back to -- if you go

21  back to this protective order, if you go to page 4 of

22  the criminal history for the CII subject, who is 321 --

23  ends in 321, it's the first criminal history report you

24  looked at, if you go to page 4, if you look under the

25  entry right near the bottom, the September 3, 1987,

                                                        35

**11/17/10 Nursall depo.**          **-24-**          **EXHIBIT A**

                                          **Exhibit "A" -** 41

```
1    entry, do you see there where it says the subject was
2    convicted, felony, possession of controlled substance?
3    Do you see that?
4         A   Yes.
5         Q   And it's got a case number of A953793.  Do you
6    see that?
7         A   Yes.
8         MR. COOK:  If we can go off the record for a
9    moment, I have to get another document.
10        (Brief recess.)
11        Q   BY MR. COOK:  I handed you a copy of a warrant
12   abstract for one Kevin Gant dated April 29, 2008.  I
13   mean I realize you don't have personal knowledge of
14   this.  It looks like a warrant abstract.  Would you
15   agree?
16        A   That's what it says at the top of the page.
17        Q   I mean the formatting is consistent with what
18   you've seen of warrant abstracts; is that true?
19        A   My experience with warrant abstracts is very
20   short as to this case.  But, yeah.  It appears to be.
21        Q   But you see the warrant number on this
22   document, middle towards the left side, XCNA953?
23        A   Right above the bail amount?
24        Q   Yes.
25        A   Yes.
```

**11/17/10 Nursall depo.**          **-25-**          **EXHIBIT A**

**Exhibit "A" -  42**

```
 1        Q    Now, go back to that criminal history and that
 2   warrant number matches up, does it not, with that 1987
 3   criminal case for which this particular subject was
 4   convicted of a felony?  Do you see that?
 5        A    Under the court disposition, yes.
 6        Q    So between looking at that criminal history and
 7   looking at this warrant abstract, it appears that this
 8   warrant abstract goes with that criminal case.
 9        A    In this case, yes.  It does.
10        Q    What's more, from the criminal history you have
11   the subject's CII number, don't you?
12        A    Yes.
13        Q    So even though there's no CII number on the
14   copy of the warrant abstract that I gave you, from the
15   criminal history you can infer what the subject's CII
16   number is, can't you?
17        A    On this specific entry, yeah.
18        Q    That's my point.  Which is even though the
19   warrant abstract doesn't always have a CII number, you
20   can, using the criminal history, obtain the CII number
21   for the warrant subject.  Wouldn't you agree?
22        MR. THEBEAU:  Objection; lacks foundation;
23   incomplete hypothetical; calls for speculation.
24        THE WITNESS:  It's possible --
25        MR. ALLEN:  Join.
```

                                                              37

**11/17/10 Nursall depo.**              -26-                    **EXHIBIT A**

                                                    **Exhibit "A" -** 43

Case 2:08-cv-05756-GAF-PJW   Document 169   Filed 11/22/10   Page 27 of 28   Page ID #:3454

```
ATE OF CALIFORNIA              REQUESTED FOR:CADJSACRAMENTO
DEPARTMENT OF JUSTICE           ATTN:J WILLIAMS RM D232
BUREAU OF CRIMINAL              REQUESTED BY:CA0349415   MNEMONIC:CJXI
IDENTIFICATION                  DATE:20101103   TIME-14:42:52   PAGE:001

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

         CRIMINAL HISTORY TRANSCRIPT          FOR OFFICIAL USE ONLY
                *UNAUTHORIZED USE IS A CRIMINAL OFFENSE*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

** PALM PRINTS AVAILABLE AT DOJ FOR PALM PRINTS CONTACT
   PALM.PRINT@DOJ.CA.GOV
***III CALIFORNIA ONLY SOURCE RECORD

   CII NUMBER    DOB      SEX      RACE        HGT  WGT  EYE  HAIR  POB
   A23166567   1958▓▓▓    M    HISPANIC       600  180  BLK  BLK   EL

   NAMES
   01 VENTURA,JOSE A              02 VENTURA,JOSE
   03 VENTURA,JOSE ALEXANDER

   MISCELLANEOUS NUMBERS
   FBI-424839VC8
   CDL-B▓▓▓▓▓7
   SOC-▓▓▓▓3252

   MISCELLANEOUS DESCRIPTORS
   CTZ EL

   OCCUPATIONS
   UNEMPLOYED
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   DATE      AGENCY/FILE NUMBER    NAME  COUNT       ACTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   APPLICANT
   20011011   CASDSOCIAL SERV CCL-CRCB   01    01   APPLICANT FOSTER FAMILY
              SACRAMENTO                              AGENCY
              330600001

                              SCN:
                              98212840013 ATI-I284VEJ012

                              20100112  -NO LONGER INTERESTED
                              COM:
                              ACN-DSS000810080000000000000000
                              00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   ARREST/DETAINED/CITED       DOB:19580714
   20071213   CASOSAN BERNARDINO    03    01   -WARRANT
              0712341877-361238162              11351 HS-POSS/PURCHASE FOR
                                                SALE NARC/CNTL SUB
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**Plaintiff Ventura Criminal
History (via CLETS)**
(CONTINUED PAGE 002)

NOT CERTIFIED

-27-

**EXHIBIT B** 0330

(1

**Exhibit "A" -** 44

STATE:20101103   TIME-14:42:52   PAGE:002
FCI I NUMBER:A23166567   NAME:VENTURA,JOSE A

CRIMINAL HISTORY TRANSCRIPT          FOR OFFICIAL USE ONLY
            *UNAUTHORIZED USE IS A CRIMINAL OFFENSE*

DATE       AGENCY/FILE NUMBER     NAME  COUNT        ACTION

                         WARRANT #LABA09752302
                         20071213  -REL/TOT OTHER SO OR PD
                         COM:
                         REL TO LASO

                         02  1203.2 PC-PROBATION
                             VIOL:REARREST/REVOKE

                         SCN:
                         998A3470170

ARREST/DETAINED/CITED          DOB:19580714
20071217  CASOLA INMATE RECEP CTR   02   01  -WARRANT
          1059963-32864879                 11351 HS-POSS/PURCHASE FOR
                                           SALE NARC/CNTL SUB
                         WARRANT #LABA097523
                         20071219  -REL/DET ONLY/ARRESTEE
                                   EXONERATED

                         COM:
                         WRONG PERSON
                              ARRESTED BY:
                              CAHPCENTRAL LOS ANGELES

                         ADR:
                         20071217 (4957, KINGSLEY,,,
                         MONTCLAIR, CA, 91763 ) TIME AT
                         ADDRESS-(8 YEARS, )

                         COM:
                         PHOTO AVAILABLE

                         SCN:
                         M15A3510008

NOT CERTIFIED

* * * *
"PROBATION FLAGS AND/OR DEPARTMENT OF MENTAL HEALTH FLAGS ON THIS RECORD
MAY NOT BE BASED ON FINGERPRINT IDENTIFICATION"
* * * *
ENTR

Plaintiff Ventura Criminal
History (via CLETS)

-28-                                        EXHIBIT B331

                                              12

                                    Exhibit "A" - 45

# EXHIBIT "B"

1   **ROBERT MANN**, CSB 48293
    **DONALD W. COOK**, CSB 116666
2   ATTORNEYS AT LAW
    3435 Wilshire Blvd., Suite 2900
3   Los Angeles, CA 90010
    (213) 252-9444; (213) 252-0091 facsimile
4   manncook@earthlink.net

5   Attorneys for Plaintiffs

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  KELVIN GANT, REGINALD LENARD          Case No. CV08-5756 GAF (PJWx)
    SMITH, JOSE ALEXANDER
12  VENTURA, individually and as class     **PLAINTIFFS' SUBMISSION**
    representatives                        **OF EXCERPTS OF**
13                                         **NOVEMBER 19, 2010**
                        Plaintiff,         **DEPOSITION OF JOHANNA**
14                                         **WILLIAMS**
    vs.
15                                         Date: 12/20/10
    COUNTY OF LOS ANGELES, ETC.,           Time: 9:30 a.m.
16  ET AL.,                                Ctrm: 740 (Roybal)

17                      Defendants.

18

19

20  TO THE COURT:

21       In Plaintiffs' counsel's November 22, 2010 declaration (document 169 filed

22  11/22/10), Plaintiffs relied on the not-yet transcribed November 19, 2010 deposition

23  testimony of California Department of Justice representative Johanna Williams. See

24  document 169 at pp. 2-3 (¶3). The transcript is now available. In relevant part Ms.

25  Williams testified:

26       • Via CLETS, in December 2007 Plaintiff Mr. Ventura's criminal history was

27         available to any California law enforcement agency, by querying using his name

28

                                  -1-                              00065126.WPD

1  and birth date, retrieving his CII number, and from that retrieving his criminal

2  history. Moreover, Mr. Ventura's criminal history would have shown that, as of

3  December 2007, Mr. Ventura had no criminal history, that he was assigned a CII

4  number in 2001 when he applied to be a foster parent. Williams depo., 30:2-9,

5  31:21-33:12 (**Exhibit A**).

6

7  • It would have taken but *seconds* for a law enforcement agency to retrieve

8  Plaintiff Mr. Ventura's criminal history via CLETS. Williams depo., 38:17-21

9  (**Exhibit A**).

10  • Per the California Department of Justice Security Log, there was no inquiry

11  made by the Chino Police Department, San Bernardino County Sheriff's

12  Department, Los Angeles County Sheriff's Department, or any other law

13  enforcement agency into Plaintiff Mr. Ventura's criminal history in December

14  2007. Williams depo., 28:23-30:9 (**Exhibit A**).

15  DATED: December 9, 2010

16

17                    **ROBERT MANN**
                   **DONALD W. COOK**
18                   Attorneys for Plaintiffs

19

20  By_____
                   Donald W. Cook
21

22

23

24

25

26

27

28

-2-

00065126.WPD

Johanna Williams                                    November 19, 2010

1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


KELVIN GANT, JOSE ALEXANDER
VENTURA,

            Plaintiff,

                                    NO. CV08-5756 GAF (PJWx)

vs.

COUNTY OF LOS ANGELES, et
al., etc.,

            Defendant.
_____/




DEPOSITION OF

JOHANNA WILLIAMS


November 19, 2010

12:55 p.m.



2151 River Plaza Drive, Suite 300
Sacramento, California




STEPHANIE D. PLASKETT CSR No. 9799



Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

11/19/10 Williams depo.                -3-                EXHIBIT A


Exhibit "B" - 48

Johanna Williams                                    November 19, 2010

2

1                         APPEARANCES OF COUNSEL

2

3    For THE PLAINTIFF:

4            LAW OFFICES OF ROBERT MANN & DONALD COOK
             By:  DONALD COOK, Esq.
5            3435 Wilshire Boulevard, Suite 2900
             Los Angeles, California 90010
6            213.252.9444

7

8    For COUNTY OF SAN BERNARDINO AND SAN BERNARDINO COUNTY
     SHERIFF'S DEPARTMENT:
9
             COUNTY OF SAN BERNARDINO
10           By:  JAMES H. THEBEAU,
             Deputy County Counsel
11           385 North Arrowhead Avenue, 4th Floor
             San Bernardino, California 92415-0140
12           909.387.4402
             (Appeared telephonically)
13

14

15   For CITY OF TORRANCE, TORRANCE POLICE DEPARTMENT, STEPHEN
     JANGAARD (erroneously sued as Steve Jangaard) AND RODNEY
     IRVINE (erroneously sued as Rod Irvine):
16
             CITY OF TORRANCE
17           By:  DELLA THOMPSON-BELL,
             Deputy City Attorney
18           3031 Torrance Boulevard
             Torrance, California 90503-5059
19           310.618.5810
             (Appeared telephonically)
20

21

     For CITY OF CHINO and CHINO POLICE DEPARTMENT:
22
             FERGUSON PRAET & SHERMAN
23           By:  ANTHONY SNODGRASS, Esq.
             1631 East 18th Street
24           Santa Ana, California 92705-7101
             714.953.5300
25           (Appeared telephonically)



ESQUIRE
an Alexander Gallo Company

**11/19/10 Williams depo.**                    **-4-**

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**EXHIBIT A**

Johanna Williams                                    November 19, 2010

3

```
1                    APPEARANCES (Con't)

2    For COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S
     DEPARTMENT:
3
             LAWRENCE BEACH ALLEN & CHOI
4            By:  SCOTT E. CARON, Esq.
             100 West Broadway, Suite 1200
5            Glendale, California 91210-1219
             818.545.1925
6            (Appeared telephonically)

7
     For JOHANNA WILLIAMS:
8
             STATE OF CALIFORNIA
9            DEPARTMENT OF JUSTICE
             OFFICE OF THE ATTORNEY GENERAL
10           By:  ASHANTE L. NORTON,
             Deputy Attorney General
11           1300 I Street, Suite 1101
             Sacramento, California 95814
12           916.322.2197

13

14

15

16

17

18

19

20

21

22

23

24

25
```



ESQUIRE
an Alexander Gallo Company

**11/19/10 Williams depo.**                    **-5-**

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**EXHIBIT A**

Exhibit "B" - 50

Johanna Williams                                    November 19, 2010

```
                                                               4
 1
 2                        INDEX OF EXAMINATION
 3                                                       Page
 4    WITNESS:  JOHANNA WILLIAMS
 5            Examination
 6            By MR. COOK                                5
 7            By MR. THEBEAU                             52
 8
 9
10
11
12
13
14
15
                           INDEX OF EXHIBITS
17    Exhibit              Description                   Page
18    A         Ms. Williams Declaration with attachments
19              (13 pages)                               20
20
21
22
23
24
25
```



ESQUIRE
an Alexander Gallo Company

**11/19/10 Williams depo.**            **-6-**

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**EXHIBIT A**

**Exhibit "B" -** 51

Johanna Williams                                        November 19, 2010

                                                                              5

1                    DEPOSITION OF JOHANNA WILLIAMS

2                         November 19, 2010

3

4                         JOHANNA WILLIAMS,

5         having been first duly sworn, testified as follows:

6                            EXAMINATION

7     BY MR. COOK:

8     Q.        State your name, please.

9     A.        Johanna, J-O-H-A-N-N-A, Williams,

10    W-I-L-L-I-A-M-S.

11    Q.        Good to see you again, Ms. Williams.  My name is

12    Donald Cook in case you've forgotten.

13              Anyway, by whom are you employed?

14    A.        California Department of Justice.

15    Q.        And what is your position with the Department of

16    Justice?

17    A.        Keeper of Records.

18    Q.        You are responding on behalf of the Department of

19    Justice to a subpoena that I caused to be served on the

20    department.  Is that your understanding?

21    A.        Yes.

22    Q.        Okay.  You provided a declaration in response to

23    the subpoena.  And what I'm going to do is mark your

24    declaration along with all the attachments as Exhibit A to

25    be part of the deposition.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**11/19/10 Williams depo.**          **-7-**                **EXHIBIT A**

Exhibit "B" - 52

Johanna Williams                                    November 19, 2010

                                                                    28

1    database, that would make perfect sense.

2    Q.      Okay.  Back to your declaration, which is page 3

3    of Exhibit A.

4            Is it correct that the two pages you reference in

5    paragraph five is a result of the search that you describe

6    in paragraph four?

7    A.      What number are you referring to?  That would

8    make it faster for me.

9    Q.      I meant your declaration, page 3.

10   A.      Right.

11   Q.      At paragraph five, you say --

12   A.      Okay, five.

13   Q.      You say, "Attached are two pages," right?

14   A.      That was number five.  I wanted -- okay.

15   Q.      Okay.  And do you understand my question?

16   A.      Yes.

17   Q.      Okay.

18   A.      Yes.

19   Q.      Okay.  So what you described in paragraph five of

20   your declaration is a result of a search that you describe

21   in paragraph four, correct?

22   A.      Yes.

23   Q.      Now, paragraph three.

24           Paragraph three describes what's referred to as

25   "a security log search"; is that right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

11/19/10 Williams depo.              -8-              EXHIBIT A

Exhibit "B" - 53

Johanna Williams                                    November 19, 2010

29

1    A.      Yes.

2    Q.      And unlike a journal search, a security log

3    search, your understanding, is not limited by time?

4    A.      Yes.

5    Q.      In other words, you can go back say five or

6    six years and do a journal -- a security log search; is

7    that right?

8    A.      Yes.

9    Q.      And a security log search will identify queries

10   into a criminal history database where the search query is

11   by CIA number; is that correct?

12   A.      Yes.

13   Q.      And pursuant to the subpoena, you did a

14   security -- you had someone perform a security log search

15   for the time period of December 12th, 2007 through

16   March 1st, 2008; is that right?

17   A.      Yes.

18   Q.      And the results of that security log search is on

19   page 7 to Exhibit A; is that true, ma'am?

20   A.      Seven.

21           Yes.

22   Q.      And what it shows is that for that timeframe,

23   there's no record of a query being made on the criminal

24   history for the subject assigned CII number 23166567; is

25   that right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

11/19/10 Williams depo.            -9-            EXHIBIT A

Exhibit "B" - 54

Johanna Williams                                    November 19, 2010

30

1    A.      Yes.

2    Q.      Is it correct that to retrieve criminal history,

3    you used a CII number to retrieve an individual's criminal

4    history?

5    A.      Yes.

6    Q.      I mean, to get to the CII number, you may have to

7    run a name and birth date search and then find the CII

8    number you want to do a search on; is that true?

9    A.      Yes.

10   Q.      And if I didn't ask it, page 7 is a result -- is

11   the results of the search you describe at paragraph three

12   of your declaration --

13   A.      Yes.

14   Q.      -- right?

15          On page 7, the security log, the fifth line down

16   from the top, you know, the next line after "Security

17   Log" --

18   A.      Uh-huh.

19   Q.      -- the first entry on that line is the CII

20   number; is that true?

21   A.      Yes.

22   Q.      The second entry, 20071212, is the beginning

23   parameter for the timeframe being searched, right?

24   A.      Yes.

25   Q.      The next entry, 20080301, is the ending date



# ESQUIRE
*an Alexander Gallo Company*

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**11/19/10 Williams depo.**            **-10-**            **EXHIBIT A**

**Exhibit "B"** - 55

Johanna Williams                                        November 19, 2010

31

1    parameter, correct?

2    A.      Correct.

3    Q.      The next line, 0000, is the beginning time

4    parameter, in this case, midnight --

5    A.      Correct.

6    Q.      -- of December 12th, 2007, right?

7    A.      Yes.

8    Q.      And the last four digits, 2359, is the ending

9    time parameter for the ending date of March 1st, 2008,

10   right?

11   A.      Right.

12   Q.      Did you perform -- did you yourself perform the

13   search that you described at paragraph six of your

14   declaration?

15   A.      I had it performed.  The criminal history --

16   Q.      Yeah, but you've done searches like that

17   yourself --

18   A.      Yes.

19   Q.      -- right?

20   A.      Yes.

21   Q.      I mean, it's actually pretty simple.  You sit in

22   front of a CLETS terminal, assuming you have your search

23   criteria, name, date of birth, CII number; you basically

24   punch in a few numbers, and it shows up on the screen,

25   right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

EXHIBIT A

Exhibit "B" - 56

Johanna Williams                                November 19, 2010

                                                                32

1    A.      Correct.  I was standing there when I --

2    Q.      Yeah.

3    A.      -- had them do it.

4    Q.      Right.

5            And the results of the search that you describe

6    in paragraph six, a printout of those results are pages 11

7    and 12, is that right, of Exhibit A?

8    A.      Yes.

9    Q.      And pages 11 and 12 is what shows up as being the

10   online criminal history events kept by the Department of

11   Justice under CII number A23166567, right?

12   A.      Right.

13   Q.      And pages 11 and 12 indicate that the only

14   criminal events under that CII number concerns a

15   December 13th, 2007 arrest of the subject by the

16   San Bernardino Sheriff's Department, as well as his

17   booking into the San Bernardino Jail and the LA County

18   Jail in the same month?

19   A.      Yes.

20   Q.      It's correct, isn't it, ma'am, that had a query

21   been made under this subject's CII number on

22   December 13th, 2007, that is before he was booked into the

23   San Bernardino County Jail, the only information available

24   online would have been this information about him having

25   been an applicant for a foster family?



ESQUIRE
an Alexander Gallo Company

**11/19/10 Williams depo.**          **-12-**

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**EXHIBIT A**

**Exhibit "B" -** 57

Johanna Williams                                    November 19, 2010

33

1   A.      Yes.

2   Q.      The -- so is it correct that this individual that

3   is under the CII number that ends with 567 was assigned a

4   CII number in October of 2001 when he apparently was an

5   applicant for the foster family?

6   A.      That's correct.

7   Q.      And at that time, do you know if that's when the

8   Department of Justice would have picked up the information

9   on his Social Security Number?

10  A.      Yes.

11  Q.      And on his driver's license number?

12  A.      Yes.

13  Q.      Incidentally, the bottom of pages 11 and 12, it

14  states, "Not Certified."  What does -- or is stamped "Not

15  Certified."  What does that mean?

16  A.      That means that I did not have that record

17  certified.  It was a transcript, the result of a

18  printout -- a printing out of our transcript at the moment

19  that I had it printed out.

20  Q.      Right.

21  A.      It was just exactly the way it was.  No

22  corrections or adjustments had been made to it.  It is

23  what it was.

24  Q.      Right.

25          I mean, you understood the subpoena as requiring



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

11/19/10 Williams depo.           -13-              EXHIBIT A

Exhibit "B" - 58

Case 2:08-cv-05756-GAF-PJW   Document 188   Filed 12/09/10   Page 14 of 15   Page ID
#:4378

Johanna Williams                                    November 19, 2010

38

1   Q.       But they all had the same birthdays and months,

2   right?

3   A.       Yes.

4   Q.       Now, to call up the records under these CII

5   numbers that are listed here on page 13 is, again, just a

6   function of going to a different menu or hitting a

7   different key, that sort of thing?

8   A.       Yes.

9   Q.       And how long does it take to get a response on,

10  you know, the computer monitor?

11  A.       It's almost immediate.

12  Q.       And to get the response that's reflected on

13  page 13, you know, after you, you know, enter your search

14  criteria, name and birth date, how fast does the response

15  show up?

16  A.       It's pretty immediate.

17  Q.       So from the time you start your search beginning

18  with the name and a birth date to the time that you

19  actually pull up the electronically-stored online criminal

20  events is literally a matter of seconds?

21  A.       Correct.

22  Q.       Now, the only criminal history information you

23  provided from any of the CII numbers listed on page 13

24  would be the criminal history for the first individual

25  listed, the one whose CII number ends with 567, true?



ESQUIRE
an Alexander Gallo Company

**11/19/10 Williams depo.**               **-14-**

Toll Free: 800.610.0505
Facsimile: 916.446.2777

Suite 300
2151 River Plaza Drive
Sacramento, CA 95833
www.esquiresolutions.com

**EXHIBIT A**

**Exhibit "B" -** 59

Case 2:08-cv-05756-GAF-PJW   Document 188   Filed 12/09/10   Page 15 of 15   Page ID #:4379

REPORTER'S CERTIFICATE

1
2      I, Dana D. Forbes, a Certified Shorthand
3   Reporter No. 8095, do hereby certify:
4      That, prior to being examined, the witness named in
5   the foregoing deposition, BRENDA WALSTROM, was by me
6   duly sworn to testify the truth, the whole truth, and
7   nothing but the truth on Nov. 17, 2010.
8      That said deposition was taken down by me in
9   shorthand at the time and place therein named and
10  thereafter transcribed by computer-aided transcription
11  under my direction, and I hereby certify that the
12  foregoing deposition is a true and correct transcript of
13  my shorthand notes so taken.
14      I certify that a request has been made by, or on
15  behalf of, the witness to review, correct and sign the
16  transcript of these proceedings.
17      I further certify that I am neither counsel for nor
18  related to any party to said action nor in anywise
19  interested in the outcome thereof.
20      IN WITNESS WHEREOF, I have hereunto subscribed my
21  name this 1st day of December, 2010.
22
23
24      _____
25      Dana D. Forbes, CSR No. 8095

70

INSTANT COURT REPORTING, INC.     (800) 498-0288

**11/19/10 Williams depo.**            **-15-**            **EXHIBIT A**

**Exhibit "B" -  60**

# EXHIBIT "C"

1  JAMES H. THEBEAU, CA Bar No. 128845
2  Deputy County Counsel
   RUTH E. STRINGER, CA Bar No. 103563
3  County Counsel
4  385 North Arrowhead Avenue, Fourth Floor
   San Bernardino, CA  92415-0140
5  Telephone:  (909) 387-4402
6  Facsimile:   (909) 387-4069
   jthebeau@cc.sbcounty.gov
7
8  Attorneys for Defendants, COUNTY OF SAN BERNARDINO,
   SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT
9
10                UNITED STATES DISTRICT COURT
11                CENTRAL DISTRICT OF CALIFORNIA
12
13
   KELVIN GANT, REGINALD          )  CV 08-5756 GAF (PJWx)
14 LENARD SMITH, JOSE             )
   ALEXANDER VENTURA,             )  REPLY IN SUPPORT OF
15                                )  DEFENDANT COUNTY OF SAN
   individually and as class      )  BERNARDINO'S MOTION FOR
16 representatives,               )  SUMMARY JUDGMENT;
                                  )  SUPPLEMENTAL DECLARATION
17                  Plaintiff[s]   )  OF JAMES H. THEBEAU
18 v.                             )
19                                )
   COUNTY OF LOS ANGELES, LOS     )
20 ANGELES COUNTY SHERIFF'S       )  DATE:  December 6, 2010
   DEPARTMENT, CITY OF LOS        )  TIME:  9:30 a.m.
21 ANGELES, LOS ANGELES POLICE    )  CTRM: 740
   DEPARTMENT, SUPERIOR           )
22 COURT OF THE COUNTY OF LOS     )
   ANGELES, CITY OF CHINO         )
23 POLICE DEPARTMENT, COUNTY      )  Honorable Judge Gary A. Feess
   OF SAN BERNARDINO, SAN         )
24 BERNARDINO COUNTY              )
   SHERIFF'S DEPARTMENT, DOES     )
25 1 through 10, both their personal and )
   official capacities,           )
26                                )
27                  Defendant[s]   )
28

                                    1

I.

**PLAINTIFF VENTURA'S THEORY OF FOURTEENTH AMENDMENT LIABILITY AS TO THE COUNTY HAS BEEN DISPROVEN BY DOJ TESTIMONY**

Plaintiff has sought a continuance based primarily on the theory that DOJ testimony would establish that defendant County could have known expeditiously from CLETS that the charge on the warrant did not belong to the plaintiff.  Plaintiff's theory was that the DOJ would establish that by using CLETS defendants would "get a return on at least two individuals (and probably more) with that name and birth date; that one of the individuals will be the Plaintiff Ventura; that another individual will be the subject of the warrant on which Mr. Ventura was arrested."  (Cook Declaration in support of Request to Continue, 3:15-22.)   The DOJ testimony proved the opposite.  The DOJ testified that there is only one person in CLETS with the name and DOB on the warrant and that person is the plaintiff.  It necessarily follows from the DOJ testimony that the warrant and charge on the warrant is not reflected in CLETS with the name and DOB on the warrant.  It also necessarily establishes that there were not two persons in CLETS with the same name and DOB as the warrant with two different CII numbers.   (Declaration of James H. Thebeau, ¶ 2; 9:11-15).

The County has met and conferred with plaintiff pursuant to LR 7-3 regarding the obvious import of the DOJ testimony, namely that not only was there no expeditious means of determining that the warrant did not belong to plaintiff, but that CLETS would have done nothing except show that that plaintiff was the only person in CLETS matching the name and DOB on the warrant.  However, plaintiff continues to assert that the County should have released him as the one person in CLETS with the

2

COUNTY OF SAN BERNARDINO REPLY TO OPPOSITION TO MSJ

26Q2575

Exhibit "C" - 62

1   name and DOB on the warrant because CLETS did not reflect an arrest
2   on the warrant.  (Thebeau Dec., ¶ 3; 9:16-10:2; Exhibit A, November 20,
3   2010 email to and from Attorney Cook in compliance with Local Rule 7-3.)
4   Again, this assertion falsely assumes that the warrant could not have
5   issued without an arrest and/or fingerprinting, that a charge in a warrant
6   will necessarily be reflected in CLETS and that it will be reflected for the
7   correct person, assumptions proved false by the DOJ testimony.
8       Plaintiff Ventura has presented no evidence whatsoever that a
9   warrant or warrant charge such as the one in this case would necessarily
10   appear anywhere in CLETS.  There is no evidence whatsoever that a
11   booking official may establish expeditiously from a lack of reference in
12   CLETS to a warrant that the warrant did not belong to plaintiff.  In the
13   absence of this evidence the fact that CLETS did not reference the
14   warrant under plaintiff's name and DOB is irrelevant and immaterial.
15   Plaintiff's reliance on Nursall's testimony is misplaced because his
16   testimony explicitly relied on two assumptions for which there is no
17   evidence in this case, namely that a booking official could be certain that
18   there was a "fingerprint verified" arrest for the charge in the warrant and
19   that the issuance of the warrant was transmitted to and reflected in
20   CLETS.  Nursall's testimony regarding Gant is misplaced as Nursall was
21   asked about documents that reference different CII numbers, i.e. cases in
22   which there was a basis for fingerprint comparison.  Plaintiff counsel's
23   speculation that the warrant is probably reflected in CLETS under a name
24   or DOB different than the name and DOB in the warrant undermines
25   rather than supports the argument that criminal history is not a reliable
26   means of ascertaining identity.  (Thebeau Dec., ¶ 3; 9:16-10:2; Exhibit A,
27   November 20, 2010 email to and from Attorney Cook in compliance with
28

3

Exhibit "C" -  63

1   Local Rule 7-3.)  Plaintiff Ventura as done nothing to establish objectively
2   that criminal history or lack therof in CLETS establishes the warrant did
3   not belong to plaintiff or subjectively that any County official was aware of
4   this.

5                                        II.

6   **PLAINTIFF'S RELIANCE ON THE WPS POLICY'S DEFINITION OF**
7          **"POSITIVE IDENTIFICATION" IS MISPLACED**

8          In response to defendant's LR 7-3 request, plaintiff asserts that
9   defendant admits that it did not require a "positive identification" "before
10  booking Mr. Ventura on the warrant."  This assertion is however irrelevant
11  and immaterial.

12         First, plaintiff is relying on a definition of "positive identification" used
13  in a WPS policy that requires an actual exchange of the detainee and
14  warrant subject's fingerprints "during the confirmation discussions
15  between the WPS record contributor and the holding agency."  (Plaintiff
16  Ventura's Fact No. 9.)  There is no authority for the notion that the Fourth
17  or Fourteenth Amendment requires a non-arresting custodial agency to
18  refuse to book and/or to release a subject on a warrant because
19  fingerprints have not been compared.  Moreover, such a standard would
20  be impossible to meet in those cases when there are not two sets of
21  fingerprints to compare, such as when a warrant issues without the
22  subject having been previously arrested and fingerprinted.   A booking
23  officer cannot assume that a particular warrant charge was accompanied
24  by an arrest and fingerprinting or that the issuance of the warrant was
25  transmitted to the DOJ in connection with that arrest and fingerprinting.
26  As noted previously, the bench warrant in this case could have issued
27  upon the warrant subject's failure to appear on a summons pursuant to
28

4

COUNTY OF SAN BERNARDINO REPLY TO OPPOSITION TO MSJ

26Q2575

Exhibit "C" - 64

1  California Penal Code § 813, in which case the subject was not
2  necessarily arrested or fingerprinted on the felony charge.  Moreover,
3  even if the subject had been arrested and fingerprinted on the felony
4  charge initially, the booking officer would have to assume that the
5  issuance of the warrant was necessarily transmitted to DOJ and properly
6  reflected in CLETS.

7      Second, there is no foundation that this WPS policy is in effect today
8  let alone on December 12, 2007.  The document relied upon by plaintiff
9  appears to show that the policy was last revised in 1997.

10     Third, the policy nowhere on its face requires this exchange before
11  booking, as asserted by plaintiff.  Rather, the policy outlined in section
12  3.6.7 applies to situations wherein the DOJ obtains prints from a booking
13  agency and conducts its own search of their Criminal History File for
14  "subsequent" wants and warrants related to the individual associated with
15  the prints.  If the DOJ tentatively identifies the individual as having prints
16  associated with a "subsequent want or warrant," the prints are tagged as
17  belonging to an individual that "may be wanted."  The booking agency
18  would then be notified by the DOJ of such findings, and identification of
19  the individual would then be accomplished through the exchange of
20  fingerprint facsimiles and/or other descriptors between the booking
21  agency and the agency holding the want/warrant.

22     Finally, there is no evidence whatsoever that any County official was
23  aware of such a policy at the time of plaintiff's booking, believed that the
24  policy imposed a requirement on the County to refuse to book the plaintiff
25  and then deliberately chose not to follow the policy.

26
27
28

5

## III.

## PLAINTIFF HAS FAILED TO MEET HIS BURDEN FOR A CONTINUANCE

FRCP, Rule 56, subdivision (f), requires that plaintiff demonstrate which facts they hope to elicit, that the facts indeed exist and how these facts will overcome summary judgment.    Facts, not conclusions or speculation, are required.  State of California ex rel. California Department of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998); Tatum v. City and County of San Francisco, 441 F.3d. 1090, 1101 (9th Cir. 2006).  None of these requirements have been met by plaintiff.

Mr. Cook's declaration fails to identify any evidence reasonably expected to be obtained that would address, let alone establish, the elements of either a Fourteenth Amendment or Monell violation.  In fact, Mr. Cook's declaration is devoid of any explanation of the Fourteenth Amendment or Monell liability standards and how plaintiff expects to meet those elements of proof.  The only factual context discussed in Cook's declaration relates to the DOJ deposition and the so-called "positive identification" "required" by WPS procedures.  As discussed above, the DOJ deposition does not support plaintiff's assertion of an "expeditious" means of determining identity or the elements of the Fourteenth Amendment or Monell claims. from criminal history and the WPS policy is irrelevant and immaterial.

It should be noted that Mr. Cook declares incorrectly that he was not notified that Nursall and Walstrom were witnesses.  First, neither Nursall nor Walstrom have personal knowledge concerning the plaintiff's booking. Second both Walstrom and Nursall were disclosed to plaintiff as expert witnesses on October 12, 2010, in response to plaintiff Ventura's own late

Exhibit "C" -  66

1  and deficient expert disclosure.   (Thebeau Dec., ¶ 4; 10:3-9.)   In any

2  event, plaintiff has their depositions and has failed to make any showing

3  that their testimony establishes the elements of his claims in accordance

4  with his burden.

5                                                IV.

6  **PLAINTIFF HAS FAILED TO PRESENT SIGNIFICANTLY PROBATIVE**

7  **EVIDENCE OF A FOURTEENTH AMENDMENT OR <u>MONELL</u>**

8  **VIOLATION**

9        Plaintiff Ventura does not dispute his burden to establish both the

10  deliberate indifference necessary to establish the underlying Fourteenth

11  Amendment violation as well as deliberate indifference by a final

12  policymaker.   Plaintiff has failed to present any evidence whatsoever

13  establishing either the subjective or objective components of a deliberate

14  indifference claim as required by <u>Farmer v. Brennan</u>, 511 U.S. 825, 837,

15  114 S.Ct. 1970 (1994) and <u>Bryan County v. Brown</u>, 520 U.S. 397, 404,

16  405 117 S.Ct. 1382 (1997).   Thus, plaintiff has failed to prove both an

17  underlying Fourteenth Amendment and that such violation was directly

18  cause by a custom, policy or practice that exhibits deliberate indifference

19  to plaintiff's rights.   Accordingly, defendant is entitled to judgment on the

20  Fourth and Fifth Claims for relief.

21                                                V.

22                         **OBJECTIONS TO EXHIBITS**

23        1.  Cook declaration and Exhibit A to declaration, excerpts of Nursall

24  deposition, filed November 22, 2010, as irrelevant, immaterial and lacking

25  foundation;

26        2.  Plaintiff's Exhibits D, C and B, Courtney deposition, 60:10 –

27  61:23, 62:20-23, 63:5 – 64:14, filed in opposition to Chino Motion for

28

26Q2575

COUNTY OF SAN BERNARDINO REPLY TO OPPOSITION TO MSJ

Exhibit "C" - 67

1  Summary Judgment (document no. 153), as irrelevant, immaterial and
2  lacking foundation;

3       3.  Plaintiff's Exhibits B, E, I and J, filed in opposition to Los Angeles
4  County Motion for Summary Judgment (document no. 126), as irrelevant,
5  lacking foundation and immaterial;

6       4.  Exhibits G and P, filed in opposition to Los Angeles County
7  Motion for Summary Judgment (document no. 126), as irrelevant, lacking
8  foundation and immaterial; and

9       5.  Exhibit F, in opposition to Chino Motion for Summary Judgment
10  (document no. 153) as irrelevant, lacking foundation (exhibit is not
11  attached to opposition) and immaterial.

12

13  **RESPECTFULLY SUBMITTED:**

14

15

16

17  Dated:  November 22, 2010         RUTH E. STRINGER
18                                    County Counsel

19

20  _____

21                                    JAMES H. THEBEAU
22                                    Deputy County Counsel

23

24

25

26

27

28

26Q2575          COUNTY OF SAN BERNARDINO REPLY TO OPPOSITION TO MSJ

Exhibit "C" - 68

Case 2:08-cv-05756-GAF-PJW   Document 171   Filed 11/22/10   Page 9 of 12   Page ID
#:3475

## SUPPLEMENTAL DECLARATION OF JAMES H. THEBEAU IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, James H. Thebeau, do declare as follows:

1.      I am an attorney licensed to practice before this court and all of the courts of the State of California.  I am employed by the County of San Bernardino in the Office of the County Counsel and, along with the County Counsel, I am the attorney of record for defendants County of San Bernardino and San Bernardino County Sheriff's Department in this matter.

2.      On Friday, November 19, 2010, I took part in the deposition of the Keeper of Records for the California Department of Justice, Johanna Williams, which was noticed by plaintiff's counsel.  Ms. Williams testified to the effect that there is only one person in CLETS with the name and DOB on the warrant and that person is the plaintiff.

3.      I met and conferred with plaintiff pursuant to LR 7-3 via email on November 20, 2010 regarding the obvious import of the DOJ testimony, namely that not only was there no expeditious means of determining that the warrant did not belong to plaintiff, but that CLETS if anything tended to confirm that the warrant belonged to plaintiff because he was the only person matching the name and DOB.  Plaintiff continues to assert that the County should have released him as the one person in CLETS with the name and DOB on the warrant because CLETS did not reflect the charge in the warrant.  Again, this assertion assumes that a charge in a warrant will necessarily be reflected in CLETS and that it will be reflected for the correct person, an assertion proved false by the DOJ testimony.  Attached hereto as Exhibit A is a true and correct copy of the email correspondence

9

COUNTY OF SAN BERNARDINO REPLY TO OPPOSITION TO MSJ

26Q2575

1  to and from Attorney Cook in response to County's LR 7-3 email regarding

2  the information provided by the DOJ.

3  4.      On October 12, 2010, defendants disclosed to plaintiff their non-

4  retained expert witnesses Brenda Walstrom, Jim Nursall, Jennie

5  Hernandez and Sarah Flory in response to plaintiff Ventura's expert

6  disclosure.  Defendants objected to plaintiff's disclosure as being untimely

7  and not in compliance with Rule 26(a)(2)(B) insomuch as plaintiff's expert

8  did not identify the factual basis for his opinions and the report failed to

9  include the exhibits intended to support the opinions.

10     I declare under penalty of perjury that the foregoing is true and

11  correct.  Executed this 22nd day of November, 2010 in San Bernardino,

12  California, United States of America.

13

14                                                    _____

15                                                    JAMES H. THEBEAU, Declarant

16

17

18

19

20

21

22

23

24

25

26

27

28

26Q2575               COUNTY OF SAN BERNARDINO REPLY TO OPPOSITION TO MSJ

Exhibit "C" - 70

# EXHIBIT A

**11**

Exhibit "C" -  71

**From:** Donald W. Cook [mailto:doncook@earthlink.net]
**Sent:** Saturday, November 20, 2010 7:42 AM
**To:** Thebeau, James
**Subject:** Re: Gant: County of San Bernardino Request for Dismissal

Plaintiff will not dismiss. Per the testimony of the DoJ & Nursall, had San Bernardino bothered to check my client's criminal history (something that would have taken but seconds) DoJ records would have confirmed that my client had never been arrested for any crime, let alone the 1994 felony drug charge on which the warrant issued. That is in addition to your clients' admitted failure/refusal to make the required positive identification matching my client to the warrant. So while a CLETS search on "Jose Ventura" & the 7/14/58 DOB may not necessarily call up the warrant subject's criminal history (probably b/c the record is under a different name [Jose Ventura was not name the LAPD used in the 1994 fingerprinting & booking]), the fact is that your client did not do what it was suppose to do before booking Mr. Ventura on the warrant.

I will be filing a supplemental declaration that includes the relevant portions of the Nursall's deposition transcript, along with the exhibit from Ms. Williams' deposition showing that my client had no criminal record.

donald w. cook
attorney at law
3435 wilshire blvd., ste. 2900
los angeles, ca 90010
(213) 252-9444

-----Original Message-----
From: "Thebeau, James"
Sent: Nov 20, 2010 6:23 AM
To: "doncook@earthlink.net"
Subject: Gant: County of San Bernardino Request for Dismissal

Please advise pursuant to LR 7-3 whether plaintiff Ventura will dismiss the County of San Bernardino for a waiver of costs and fees given the DOJ record keeper's testimony that plaintiff Ventura is the only person in CLETS reflecting the name and date of birth on the warrant.

Plaintiff Ventura's theory that defendants could have known by a search of CLETS that the warrant or criminal history in the warrant did not belong to plaintiff is obviously not viable in view of the DOJ's testimony. We will be advising the Court on Monday regarding this development as well as our effort to meet and confer with you pursuant to LR 7-3.

Thank you for your immediate attention to this matter.

**12**

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-05766-JHN -JCx | | Date | June 2, 2011 |
|---|---|---|---|---|
| Title | Phillip Reed v. Lee Baca et al. | | | |

| Present: The Honorable | JACQUELINE H. NGUYEN | |
|---|---|---|

| Alicia Mamer | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not present | Not present |

**Proceedings:**   ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION   (In Chambers)

The Court is in receipt of Plaintiff Phillip Reed's ("Plaintiff") *ex parte* Application to Strike Declarations. (Docket no. 41.)  Defendants Sheriff Lee Baca and the Los Angeles County Sheriff's Department filed an Opposition.  ("Opp'n"; docket no. 44.)  Having reviewed and considered the parties' papers, the Court DENIES the Application.

On August 3, 2010, Plaintiff filed suit against Defendants alleging the following: (1) violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. Section 1983; (2) violation of  Cal. Civil Code Section 52.1; (3) wrongful arrest; and (4) false imprisonment. (Docket no. 1.)

On April 25, 2011, Defendants filed a Motion for Summary Judgment. (Docket no 18.)  On May 3, 2011, Plaintiff filed an Opposition.  (Docket no. 22.)  Defendants filed a Reply on May 23, 2011. (Docket no. 34.)  Along with their Reply to Plaintiff's Opposition, Defendants submitted, among other declarations and exhibits, the declarations of Angela Becerra, Stephen Park, and Randall Perry. (Docket no. 35.) On May 25, 2011, the Court received the instant *ex parte* Application to strike these declarations. (Docket no. 41.)

Plaintiff argues that Defendants violated Federal Rule of Civil Procedure 6(c)(2) or Local Rule 7-5(c)[1] by filing declarations along with their Reply. (Ex Parte Applic. at 3.) Although evidence to support novel arguments should not be submitted with the Reply, Defendants filed the declarations of Becerra, Park, and Perry in support of their

---

    [1]  The Court assumes that Plaintiff intended to cite to Local Rule 7-5(b).

**Exhibit "D" -  73**

Case 2:10-cv-05766-JHN -JC   Document 45   Filed 06/02/11   Page 2 of 2   Page ID #:1266

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-05766-JHN -JCx | Date | June 2, 2011 |
|---|---|---|---|
| Title | Phillip Reed v. Lee Baca et al. | | |

objections to the evidence Plaintiff submitted with the Opposition.  Therefore, the declarations were properly submitted with the Reply.

As a fall-back argument, Plaintiff contends that he was deprived the opportunity to contest the factual claims in Becerra's declaration. (Ex Parte Applic. at 4.)  However, the Court recently found that Plaintiff was not without fault in failing to properly schedule a deposition date before the discovery cut-off.  (Order Denying Plaintiff's Ex Parte Application; docket no. 42.)

For these reasons, the *ex parte* application to strike the declarations of Angela Becerra, Stephen Park, and Randall Perry, is DENIED.

IT IS SO ORDERED.

| | : | N/A |
|---|---|---|
| Initials of Preparer | AM | |

Exhibit "D" - 74